Cathy Yvonne STONE, Plaintiff–Appellant,

v.

Hank WILLIAMS, Jr., Billie Jean Williams Berlin, Chappell Music Company, a division of Chappell & Co., Inc., a Delaware Corporation, Aberbach Enterprises, Ltd., a New York Corporation, Acuff–Rose–Opryland Music, Inc., a Tennessee Corporation, Milene Opryland Music, Inc., a Tennessee Corporation, Wesley H. Rose and Roy Acuff, Individually and as Trustees in Liquidation for Stockholders of Fred Rose Music, Inc., and Milene Music, Inc., Fred Rose Music, Inc., a Tennessee Corporation, and Milene Music Inc., a Tennessee Corporation, Defendants–Appellants.

Docket No. 91–7706.

United States Court of Appeals, Second Circuit.

Submitted Nov. 13, 1991.

Decided July 13, 1992.

Milton A. Rudin, Beverly Hills, Cal. (Joseph L. Golden, Rudin, Appel & Rosenfeld, Beverly Hills, Cal., Kenneth E. Warner, Coblence & Warner, New York City, of counsel), for plaintiff-appellant Cathy Yvonne Stone.

Alan L. Shulman, New York City (Richard H. Frank, Jr., W. Michael Milom, Christian A. Horsnell, Silverman & Shulman, P.C., New York City, Lawrence I. Fox, Stephen K. Rush, David L. Kleinfelter, McDermott, Will & Emery, New York City, of counsel), for defendants-appellees Hank Williams, Jr., Acuff–Rose–Opryland Music, Inc., Milene–Opryland Music, Inc., Wesley H. Rose, Roy Acuff, Fred Rose Music, Inc. and Milene Music, Inc.

Thomas R. Levy, New York City, for defendants-appellees Billie Jean Williams Berlin, Chappell Music Co. and Aberbach Enterprises, Ltd.

Before: VAN GRAAFEILAND, CARDAMONE, and PIERCE, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal continues the bitter litigation arising from plaintiff's belated discovery that she is the daughter of the late famous country and western singer Hank Williams, Sr. Because we have set forth in some detail on two previous occasions the principal players and their roles in this matter, see *Stone v. Williams*, 873 F.2d 620 (2d Cir.) (*Stone I*), cert. denied, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989), vacated, 891 F.2d 401 (2d Cir.1989) (*Stone II*), cert. denied, 496 U.S. 937, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990), we assume the reader's familiarity with much of the background and report only such facts in the following discussion as is necessary to make it intelligible.

Plaintiff commenced this action in the United States District Court for the Southern District of New York (Keenan, J.) on September 12, 1985 seeking a declaration that she is Williams, Sr.'s child within the meaning of §§ 24 and 304(a) of the Copyright Acts of 1909, ch. 320, 35 Stat. 1075 *et seq.* (1909), as amended, ch. 391, 61 Stat. 652 *et seq.* (1947), and 1976, 17 U.S.C. §§ 101 *et seq.*, respectively, and therefore entitled to copyright renewals for his extensive repertory of songs. The defendants are Hank Williams, Jr., the singer's son, and Billie Jean Williams Berlin, the singer's widow. The other defendants in this suit are assignees of certain of their interests. Williams, Jr. assigned an interest in his renewal copyrights to defendants Fred Rose Music, Inc. (Fred Rose), which subsequently assigned certain rights to Milene Music, Inc. (Milene). Defendants Wesley Rose and Roy Acuff served as liquidation trustees for Fred Rose and Milene. Acuff–Rose Opryland Music, Inc. (Acuff–Rose) and Milene–Opryland Music, Inc. (Milene–Opryland) are successors in interest to Wesley Rose and Roy Acuff. Thus, Williams, Jr., Acuff–Rose, Milene–Opryland, Wesley Rose, Roy Acuff, Fred Rose and Milene (collectively, the Acuff/Rose defendants) hold an interest in the copyright renewals through Williams, Jr. Billie Jean Williams Berlin assigned an interest to defendant Aberbach Enterprises, Ltd. (Aberbach) in her copyright renewals. By contract with Aberbach, Chappell Music Co. (Chappell) serves as administrator of Berlin's interests in the renewal copyrights. Thus, Berlin, Aberbach and Chappell (collectively, the Berlin defendants) hold an interest in the copyright renewals through Berlin.

The district court in 1988, 1988 WL 96091, granted summary judgment in favor of defendants on the ground of laches. We affirmed. *Stone I*, 873 F.2d at 624–26. On petition for rehearing the decision in *Stone I* was vacated and the panel reversed the district court's holding on laches, *Stone II*, 891 F.2d at 404–05, in light of the Alabama Supreme Court's intervening decision in *Stone v. Gulf American Fire & Casualty Co.*, 554 So.2d 346 (Ala.1989) (*Gulf American*), cert. denied, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990).

The *Gulf American* suit was instituted by defendants Williams, Jr., Wesley Rose and Roy Acuff, seeking a declaration that Stone was barred from demonstrating that she was the natural child of Williams, Sr.

entitled to a share of his estate. Stone counter-claimed seeking to establish her status as a child of Williams, Sr. and also filed a third-party action seeking to have his estate reopened. She alleged in her third-party action that Irene Smith (Williams, Sr.'s sister, who served as administratrix of the estate), Robert Stewart (attorney for the estate), and the insurance companies serving as sureties for the estate had conspired to conceal her identity. The Alabama Circuit Court granted summary judgment in favor of Williams, Jr., Wesley Rose and Roy Acuff in their declaratory suit and in favor of the third-party defendants in Stone's suit to reopen the estate, though it did hold after a trial that Williams, Sr. was Stone's father. Stone appealed the decision denying her application to reopen the estate. Williams Jr., Rose and Acuff took no appeal from the trial court's finding that Stone was the daughter of Williams Sr.

On Stone's appeal, the Alabama Supreme Court reversed. It set aside judgments rendered by the Montgomery County Circuit Court in 1967 and 1968 declaring Williams, Jr. to be the sole beneficiary of the estate, and held that plaintiff was entitled to a proportional share of the proceeds of Williams, Sr.'s estate. The Alabama Supreme Court concluded that due to the fraud and concealment by the parties involved, plaintiff's action to reopen her father's estate was timely. In light of this finding, we held that laches did not bar plaintiff's suit, *see Stone II*, 891 F.2d at 404–05, and accordingly remanded the case to the district court for further proceedings.

On remand, the district court considered alternative bases asserted by defendants for summary judgment. It held the paternity decision in *Gulf American* was not entitled to preclusive effect because Williams, Jr. was not afforded a full and fair opportunity to litigate the issues decided and because none of the other defendants were parties or in privity with parties to the third-party action appealed to the Alabama Supreme Court. The district court further ruled that Stone's first cause of action accrued no later than October 17,

1979 and was therefore barred by the three year statute of limitations in 17 U.S.C. § 507(b), 766 F.Supp. 158. As to plaintiff's second cause of action—alleging conspiracy to suppress material facts concerning her status and rights as an heir—the district court found that as defendants were under no duty to divulge information to plaintiff, their mere silence could not give rise to a claim for conspiracy. Stone appeals. We reverse.

## DISCUSSION

### I Statute of Limitations

The first question addressed is whether plaintiff's first cause of action seeking an interest in renewals is time-barred. We start with the Copyright Act of 1976 that provides

> No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the *claim accrued.*

17 U.S.C. § 507(b) (emphasis added). This provision parallels § 115(b) of the 1909 Act, as amended, Pub.L. No. 85–313, 71 Stat. 633 (1957). H.R.Rep. No. 1476, 94th Cong., 2d Sess. 164, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5780. As no substantive change for limitations purposes was made, the considerations underlying our analysis are the same for renewals governed under either the 1909 or 1976 Act. *See Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir.1983).

### A. *Declaration of Rights*

The district court viewed Stone's action merely as seeking a declaration of her rights under the Copyright Act. It concluded further that since her claim accrued no later than October 17, 1979—when plaintiff admitted having been told by her adoptive mother of her possible identity—her suit, brought more than three years after October 17, 1979, was untimely. We agree Stone is attempting to establish her status as a "child" of Williams, Sr. through a declaratory judgment action. Yet, it is plain that plaintiff seeks more than a declaration of her rights, as her third amended

complaint demonstrates: "First Claim For Relief for Declaration of Rights, Accounting, Damages, and Imposition of Constructive Trust and/or Resulting Trust." These different claims must be analyzed separately for statute of limitations purposes.

In ruling that because the Copyright Act has a three-year statute of limitations, declaratory judgment suits are subject to the same time-bar, the district court lumped together separate and distinct claims made by plaintiff: one, for a declaration of status, and the other for relief as a result of that status. Because a declaratory judgment action is a procedural device used to vindicate substantive rights, it is time-barred only if relief on a direct claim based on such rights would also be barred. *See 118 E. 60th Owners, Inc. v. Bonner Properties, Inc.*, 677 F.2d 200, 202 (2d Cir.1982); *Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir.1963). Thus, determining whether the three year statute of limitations in § 507(b) prevents plaintiff from seeking a declaration that she is a child of Williams, Sr. requires assessment of whether the relief sought as the result of such status, specifically, an accounting, damages and imposition of a constructive trust—the substantive cause of action—is time barred.

### B. *Substantive Cause of Action*

■ In determining whether the relief sought is time-barred, we must decide when it first arose. In this connection, we observe that Stone's asserted right to relief stems from defendants' failure to remit royalty payments to which she claims entitlement as a child of Williams, Sr. A cause of action accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised. *See Cullen v. Margiotta*, 811 F.2d 698, 725 (2d Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); *Keating v. Carey*, 706 F.2d 377, 382 (2d Cir.1983). The claim in this case is an entitlement to renewal copyrights under §§ 24 and 304(a) of the 1909 and 1976 Acts. The injury which is the basis of the action is the deprivation of this statutory entitlement.

Thus, the statute of limitations did not begin to run until plaintiff had reason to know of the facts giving rise to her statutory entitlement, *i.e.*, that she was a child of Williams, Sr. Accordingly, for plaintiff's cause of action to have accrued—for plaintiff to have known or have had reason to know of her injury—"knowledge" that Williams, Sr. was her natural father was essential.

### 1. *Accrual*

■ The district court found that by October 17, 1979 a reasonably diligent person in plaintiff's position would have been put on inquiry as to the existence of a right to renewals in Williams, Sr.'s works. We agree. The record reveals that plaintiff first learned in 1973 from her adoptive mother of the possibility that she might be the daughter of Williams, Sr. In 1974, she read a biography which mentioned that he may have fathered an illegitimate daughter. *See Stone I*, 873 F.2d at 622–23. On October 17, 1979 she acknowledged to representatives of the Alabama Department of Pensions and Security that her adoptive mother had told her that Williams, Sr. might be her natural father. At this point, Stone had notice of her claim. Although plaintiff's failure to pursue the matter aggressively until her adoptive father indicated his support if she desired to do so might be excusable for purposes of laches, *see id.* at 624, it is irrelevant to the question of whether she had notice of her claim for statute of limitations purposes.

Plaintiff argues that the statute of limitations should be tolled due to the fraud perpetrated on her. We agree that plaintiff's relationship with Williams, Sr. was fraudulently concealed, and the law is clear that fraudulent concealment of the existence of a cause of action tolls the running of the statute of limitations. *See, e.g., Barrett v. United States*, 689 F.2d 324, 327 (2d Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). But such tolling is not indefinite. It lasts only so long as the fraud is effective. *See Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 341 (5th Cir.1971). Fraudulent

concealment does not lessen a plaintiff's duty of diligence; it merely measures what a reasonably diligent plaintiff would or could have known regarding the claim. *See Campbell v. Upjohn Co.,* 676 F.2d 1122, 1128 (6th Cir.1982).

The fact that it was fraudulently concealed from plaintiff that Williams, Sr. was her natural father therefore tolls the statute only up to the time when, despite the fraud, plaintiff had notice of this possibility. *Prather,* 446 F.2d at 341 (once plaintiff on inquiry that potential claim exists statute of limitations starts to run) (quoting *Japanese War Notes Claimants Ass'n v. United States,* 373 F.2d 356, 359, 178 Ct.Cl. 630, *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967)). The duty of inquiry having arisen, plaintiff is charged with whatever knowledge an inquiry would have revealed. *See, e.g., Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir.1983); *Briskin v. Ernst & Ernst,* 589 F.2d 1363, 1367 (9th Cir.1978).

Plaintiff asserts that even assuming she knew in October 1979 of the possibility that she was Williams, Sr.'s daughter, such knowledge was insufficient to commence the running of the limitations period because she was unaware then that she was suffering *economic* injury. In other words, the statute did not run until she learned there were property interests denominated copyright renewals to which she might be entitled.

■ We cannot adopt the proposition that to trigger the statute of limitations not only must plaintiff know of the facts furnishing her with a cause of action, but also that those facts are sufficient to entitle her to relief. *See Arneil v. Ramsey,* 550 F.2d 774, 781 (2d Cir.1977) (unawareness of law does not justify suspending operation of statute); *Japanese War Notes,* 373 F.2d at 359 (ignorance of rights which should be known is not enough to toll statute). While the case law has stressed that a plaintiff must know of the "injury," by adding the adjective "economic" plaintiff cannot undermine the premise upon which these holdings are based: the legal rights that stem from certain facts or circumstances

need not be known, only the facts or circumstances themselves. *See United States v. Kubrick,* 444 U.S. 111, 123, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979) (accrual of negligence claim under Federal Tort Claims Act occurs when plaintiff knows of the physical harm and who inflicted it, not when plaintiff later becomes aware that complained-of injury was negligently inflicted); *Barrett,* 689 F.2d at 328. In this case, Stone was put on notice no later than October 1979 that she might be the child of Williams, Sr., and she knew then that she was receiving no money as a result of such relationship. This was sufficient knowledge of the relevant facts to start the limitations period running.

### 2. Relief

Having concluded that Stone had notice of a potential claim by October of 1979, the question then becomes the significance for limitations purposes of such information. Plaintiff argues that this knowledge, though arising more than three years prior to her suit, does not bar relief for deprivations occurring before September 12, 1982. She contends that defendants' ongoing exploitation of her interest in the copyright renewals and their failure to account to her for her share is a continuous course of wrongful conduct precluding a statute of limitations defense. *See generally, e.g., Rapf v. Suffolk County of New York,* 755 F.2d 282, 290 (2d Cir.1985); *Avco Corp. v. Precision Air Parts, Inc.,* 676 F.2d 494, 496 (11th Cir.), *cert. denied,* 459 U.S. 1037, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982). We disagree.

■ The holder of a copyright has a property interest which, when invaded by an infringer, may be vindicated by an infringement action. 17 U.S.C. § 501(b). Each act of infringement is a distinct harm giving rise to an independent claim for relief. *See Mount v. Book-of-the-Month Club, Inc.,* 555 F.2d 1108 (2d Cir.1977). This does not mean that when infringements occur during the limitations period recovery may be had for past infringements. Recovery is allowed only for those acts occurring within three years of suit,

and is disallowed for earlier infringing acts. *See id.* at 1110–11. Application of the continuous wrong doctrine generally has been rejected in the infringement context. *See, e.g., Hoey v. Dexel Systems Corp.,* 716 F.Supp. 222, 223–24 (E.D.Va. 1989); *Gaste v. Kaiserman,* 669 F.Supp. 583, 584 (S.D.N.Y.1987); *Hoste v. Radio Corp. of America,* 654 F.2d 11, 11–12 (6th Cir.1981) (per curiam).

▮ The same rule that governs infringements of copyrights applies to renewal royalties. Infringements of copyrights are actionable because they deprive the copyright holder of the exclusive benefit from exploitation of that work to which he or she is statutorily entitled. *See* 17 U.S.C. § 106. *Cf. Washingtonian Publishing Co. v. Pearson,* 306 U.S. 30, 39, 59 S.Ct. 397, 401–02, 83 L.Ed. 470 (1939) (value of copyright depends on the possibility of its enforcement). Similarly, copyright renewals are a property interest created by statute for the remunerative benefit of the author, or if the author is not alive at the expiration of the original term, for a class of designated statutory beneficiaries. *See, e.g., Stewart v. Abend,* 495 U.S. 207, 217–19, 110 S.Ct. 1750, 1758–59, 109 L.Ed.2d 184 (1990). Each time the holder of a copyright renewal is deprived of his or her statutory entitlement, for example, by nonpayment of royalties, a distinct harm is done to the owner's property interest. Stone's failure to seek relief promptly for violations of her entitlement to renewal copyrights does not make defendants immune from suit for later violations.

Defendants respond that infringement cases are distinguishable because the copyright's ownership had been established within the limitations period. Here, defendants insist, because plaintiff did not seek a judicial determination that she was an owner of the copyright renewals within three years of 1979 she cannot now do so and then assert a cause of action based on such ownership.

An overly technical approach to copyright entitlements has not carried the day in other contexts, and it fails to do so in this one. *See generally* 3 M. Nimmer & D.

Nimmer, Nimmer on Copyright § 12.05, at 12–104–05 (1992) (Nimmer) (where failure to satisfy procedural requirements is jurisdictional courts generally allow procedural compliance to relate back to filing of complaint). For instance, it had been held under the 1909 Act that since an author's claim to copyright arose upon publication with notice of copyright (under the 1976 Act copyright protection begins from the date of "creation," 17 U.S.C. § 302(a)), mere delay in depositing copies (necessary to institute suit) did not bar relief for acts of infringement occurring within the limitations period. *See Washingtonian Publishing,* 306 U.S. at 39–42, 59 S.Ct. at 401–403, *see also Ziegelheim v. Flohr,* 119 F.Supp. 324, 328–29 (E.D.N.Y.1954) (delay in obtaining certificate of registration does not constitute abandonment of copyright). Similarly, failure to timely file a notice of use did not bar claims based on infringing acts done subsequent to such filing and within three years of suit. *See Norbay Music, Inc. v. King Records, Inc.,* 290 F.2d 617, 619 (2d Cir.1961); *see also Rosette v. Rainbo Record Mfg. Corp.,* 354 F.Supp. 1183, 1192–93 (S.D.N.Y.1973), *aff'd,* 546 F.2d 461 (2d Cir.1976) (per curiam).

Defendants' contention ignores the distinction between what must be done to give rise to certain rights and what needs to be done to vindicate those rights. *See United States v. Obermeier,* 186 F.2d 243, 254–55 (2d Cir.1950) (except in the rare instance when the statute creating the substantive right makes the limitation period a part of, or qualification on, the right itself, limitation statute establishes no unalterable legal relationships), *cert. denied,* 340 U.S. 951, 71 S.Ct. 569, 95 L.Ed. 685 (1951); *cf. Kunstsammlungen Zu Weimar v. Elicofon,* 678 F.2d 1150, 1161 (2d Cir.1982) (where demand and refusal are substantive elements of cause of action for replevin, statute of limitations begins to run only after refusal, not when right to make demand arises). *See also Epoch Producing Corp. v. Killiam Shows, Inc.,* 522 F.2d 737, 740–41 n. 2 (2d Cir.1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976).

■ As with a copyright itself, a copyright renewal is a creature of statute. *Miller Music Corp. v. Charles N. Daniels, Inc.*, 362 U.S. 373, 375, 80 S.Ct. 792, 794, 4 L.Ed.2d 804 (1960). One's entitlement to a copyright or a renewal is therefore determined by statute, *see Epoch Producing Corp.*, 522 F.2d at 743, and the statute nowhere suggests that one loses a right to renewals merely by delaying assertion of that right. *Cf. Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir.) (mere lack of action does not amount to abandonment of copyright), *cert. denied*, 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960); *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 372 (9th Cir. 1947) (delay amounts to estoppel only where it is such as to justify belief by infringer that there is immunity from a claim of liability).

■ Of course, a copyright and its renewal are continuous, though distinct, property interests stemming from the original work. Consequently, failure to register and renew a copyright prior to expiration of the original term prevents the renewal copyright from ever arising. *See, e.g., G. Ricordi & Co. v. Paramount Pictures, Inc.*, 189 F.2d 469, 471 (2d Cir.), *cert. denied*, 342 U.S. 849, 72 S.Ct. 77, 96 L.Ed. 641 (1951); *Silverman v. Sunrise Pictures Corp.*, 273 F. 909, 912 (2d Cir.1921). But this is not the situation at bar. Here, the copyright renewal, as a property interest, was properly established. The question presented is the extent to which, once so created, one entitled to share in it is barred from realizing that share. *See Rose v. Bourne, Inc.*, 176 F.Supp. 605, 610 (S.D.N.Y.1959) (registration renews a copyright but does not determine ownership of the copyright as renewed), *aff'd*, 279 F.2d 79 (2d Cir.) (per curiam), *cert. denied*, 364 U.S. 880, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960).

In order for plaintiff to be entitled to a share of copyright renewals under §§ 24 and 304(a), she need only be a "child" of the author. One does not lose such status because of delay in asking a court to declare it. Hence, as certification or registration and like requirements are necessary to maintain infringement actions, establishment of one's status as a child is necessary to maintain an action alleging deprivation of renewal rights; since a failure to satisfy such prerequisites to bringing suit may be cured and does not forever preclude relief for infringements, by a parity of reasoning, a failure to establish status as a child does not forever preclude relief for the invasion of renewal rights.

■ Accordingly, merely because Stone could have brought suit in 1979 does not prevent her suit (only some of the relief sought) in 1985. To hold otherwise would ignore the long established rule that statutes of limitations bar remedies, not the assertion of rights. *See, e.g., Obermeier*, 186 F.2d at 254. This principle applies to the Copyright Act. *Prather*, 446 F.2d at 340. Thus, Stone's suit is timely insofar as relief is sought for defendants' failure to remit to her a proportionate share of royalties received within three years of suit. *See Shapiro, Bernstein & Co. v. Jerry Vogel Music Co.*, 223 F.2d 252, 254 (2d Cir.1955) (per curiam) (co-owners of renewal copyrights must account to each other for exploitation thereof), *modifying*, 221 F.2d 569 (2d Cir.1955); *Tobani v. Carl Fischer, Inc.*, 98 F.2d 57, 59 (2d Cir.) (renewal taken out by one child held for benefit of other children), *cert. denied*, 305 U.S. 650, 59 S.Ct. 243, 83 L.Ed. 420 (1938). *See also Edward B. Marks Music Corp. v. Charles K. Harris Music Publishing Co.*, 255 F.2d 518, 522 (2d Cir.) (plaintiff having won on claim seeking a declaration of ownership of renewal copyrights, it was error for district court to deny plaintiff's motion for further relief based on declaration; unless otherwise barred, further relief based on declaration is proper), *cert. denied*, 358 U.S. 831, 79 S.Ct. 51, 3 L.Ed.2d 69 (1958).

■ Stone's alternative claim for the imposition of a constructive trust on income derived from the renewals is also timely. A constructive trust is a remedial device imposed in favor of one entitled to property that is wrongfully withheld or where to allow the present holder to retain the property would result in unjust enrichment. *See V A.W. Scott, The Law of*

Trusts §§ 461, 462.2, at 3410, 3417 (3d ed. 1967). Generally, a beneficiary is barred from enforcing a constructive trust if the limitations period for actions at law in analogous cases has run. *See id.* § 481.1 at 3465; *see also* 4A R. Powell, Powell on Real Property § 595, at 48–23–24 (P. Rohan ed. 1992) (as constructive trust is remedial rather than substantive device, the statute of limitations to be applied is determined by the nature of the right sued upon); *cf. Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 18 (2d Cir.1983).

The analogous legal remedy for Stone's attempt to impose a constructive trust is an action for accounting and/or damages. The basis of such an action is her claimed entitlement to a share of copyright renewals. The nature of the right is such that a new claim for relief arises each time the right is invaded by defendants' failure to remit to plaintiff her due share of income derived from the renewals. Hence, if Stone is entitled to a share of renewals, a constructive trust may be imposed upon income derived from it within three years of suit. *See Brecht v. Bentley*, 185 F.Supp. 890, 894 (S.D.N.Y.1960) (cause of action to impose constructive trust on copyright accrues when defendant asserts rights in the copyright to the exclusion of plaintiff's claimed *interest* therein); *see also Dolmetta*, 712 F.2d at 18 (cause of action for imposition of constructive trust runs from occurrence of the wrongful act or event which creates the duty of restitution).

## II Collateral Estoppel/*Res Judicata*

Accordingly, plaintiff is entitled to seek appropriate relief for defendants' failure to remit to her a due share of royalties received within three years of September 12, 1985 (the date her suit was commenced) if she is a "child" of Williams, Sr. within the meaning of §§ 24 and 304(a). The parties each contend that the other is either collaterally estopped or barred by *res judicata* from litigating Stone's paternity. Defendants contend that the 1967 and 1968 decisions of the Montgomery County Circuit Court are determinative on this question. Plaintiff asserts that the 1985 Alabama Supreme Court decision in *Gulf American* is similarly dispositive. We briefly summarize the history of these state court proceedings.

### A. *History*

In 1963 Irene Smith, acting as guardian for Williams, Jr., assigned Williams, Jr.'s interest in the copyright renewals to Fred Rose. During state court proceedings to approve the agreement, the existence of appellant, though known by Smith and Fred Rose, was not disclosed and the agreement was approved. In 1967, Audrey Williams (Williams, Sr.'s ex-wife and the mother of Williams, Jr.) and Williams, Jr. petitioned the Montgomery County Circuit Court for final settlement of the estate. In 1968 related proceedings were instituted concerning the guardianship estate of Williams, Jr. In these proceedings the potential existence of unknown heirs was first made known to the Montgomery County Circuit Court. A guardian ad litem was appointed to represent such interests.

At issue in those proceedings was whether Williams, Jr. was the sole beneficiary entitled to inherit from Williams, Sr.'s estate. In its order of December 1, 1967, the Circuit Court ruled that there had not been sufficient compliance with the laws of Alabama [1] to give Stone a right of inheritance

---

1. Ala.Code, Tit. 27, § 11 (1940)

 Proceedings to legitimate bastard children; effect of:

 The father of a bastard child may legitimate it, and render it capable of inheriting his estate, by making a declaration in writing, attested by two witnesses, setting forth the name of the child proposed to be legitimated, its sex, supposed age, and the name of the mother, and that he thereby recognizes it as his child, and capable of inheriting his estate,

real and personal, as if born in wedlock; the declaration being acknowledged by the maker before the judge of probate of the county of his residence, or its execution proved by the attesting witnesses, filed in the office of the judge of probate, and recorded in the minutes of his court, has the effect to legitimate such child.

"It is quite possible that the 1952 custody and support agreement [*see Stone I*, 873 F.2d at 622] would have been sufficient to legitimate Stone if

from Williams, Sr. It concluded that Hank Williams, Jr. was the sole heir. The following month the same court decided plaintiff had no right to any of Williams, Sr.'s copyrights or renewals. These determinations that Stone was not an heir and not entitled to share in the estate were based on the fact that she had not been legitimized under Alabama law, *not on any finding that Stone was not the biological child of Williams, Sr.* The guardian ad litem's leave to appeal the state trial court's rulings was denied. The estate was finally closed in 1975.

In its July 5, 1989 decision the Alabama Supreme Court stated that the issue before it—in light of the trial court's finding that Stone was the natural child of Williams, Sr.—was whether the 1967 and 1968 judgments should be set aside and the estate reopened because of legal fraud. Stone had appealed the grant of summary judgment in favor of defendants Smith, Stewart and the estate's sureties in her third-party action. Stone did not appeal the grant of summary judgment in favor of defendants Williams, Jr., Wesley Rose and Roy Acuff in their action seeking a declaration that Stone was barred from establishing any entitlement to the estate of Williams, Sr. No appeal was taken by any party from the trial court's finding of paternity.

The State Supreme Court concluded that Smith and Stewart withheld from the court before and during the 1967 and 1968 proceedings material facts of which they were aware concerning Stone's paternity. 554 So.2d at 352–60. As administratrix and attorney for the estate, respectively, they were obliged to advise the court of Stone's existence and potential claims, and their dereliction deprived Stone of the hearing to which she was entitled. *Id.* at 359–60.

For that reason *Gulf American* set aside the 1967 and 1968 judgments as they effected Stone's right to share in her father's estate. Even though no appeal had been taken from the declaratory judgment in the action instituted by Williams, Jr., Wesley Rose and Roy Acuff as plaintiffs, the Ala-

bama Court determined Stone's right to inherit. It noted that under present Alabama law one method for an illegitimate child to be considered an heir of its father is if paternity is established by an adjudication before the death of the father or thereafter (without time limit) by clear and convincing proof. Such evidence was found to exist in Stone's case. *Id.* at 367 & n. 23.

Although a judicial determination of paternity was not available in 1967 or 1968 as an avenue of legitimation for purposes of intestate succession, the Supreme Court of Alabama ruled that since the action was timely and properly before it, it should apply the law presently in existence. *Id.* at 368. And because Stone was not adopted at the time of Williams, Sr.'s death—the time at which her right to inherit vested— her subsequent adoption was irrelevant for purposes of intestate succession. *Id.* at 368–69. It therefore ordered the estate reopened, and declared that Stone was entitled to her proportionate share of proceeds from the estate of Williams, Sr., but prospectively only.

On Application for Rehearing, *Gulf American* addressed the contention of Williams, Jr. that its original opinion should be vacated and/or modified because he was not a party to that appeal and therefore was denied due process. In a November 9, 1989 decision the court concluded that the complaint of Williams, Jr. and Stone's third-party complaint were litigated together and were functionally identical in terms of the issues presented. *See id.* at 373. Moreover, it held Stone's third-party suit to reopen the estate was an action *in rem* over which it had jurisdiction to review the rights of all affected parties. *Id.* at 373– 74. Williams, Jr.'s petition was therefore denied.

### B. *Discussion*

28 U.S.C. § 1738 provides that

judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States ... as they have by law or

---

Stewart, the child's mother, or other parties, including the State of Alabama, had attempted

to utilize this method." *Gulf American,* 554 So.2d at 364 n. 19.

usage in the courts of [the] State ... from which they are taken.

This statute places upon federal courts the same burden as the Constitution's Full Faith and Credit clause places upon state courts—"to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). *Accord Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704 & n. 9, 102 S.Ct. 1357, 1366 & n. 9, 71 L.Ed.2d 558 (1982). Our statement in *Stone II* that we were "not bound by the decision of the Alabama Supreme Court— its decision involved different parties and applicable law," 891 F.2d at 404, was addressed to *Gulf American's* finding of fraud on the part of Stewart and Smith. Paternity was not then an issue before us. Unlike the laches question presented in *Stone II*, we look to Alabama law to determine whether principles of *res judicata* or collateral estoppel bar the parties' respective arguments concerning heirship and paternity. *See, e.g., Kremer*, 456 U.S. at 481–82, 102 S.Ct. at 1897–98.

Generally, *res judicata* (claim preclusion) operates to prevent the parties or their privies to a prior action from litigating any matter that was or could have been decided in a previous suit. *See Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir.1985). Broadly speaking, "a final judgment on the merits bars further claims by the parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). *Accord Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Henderson v. Scott*, 418 So.2d 840, 841–42 (Ala.1982); *Wheeler v. First Ala. Bank of Birmingham*, 364 So.2d 1190, 1199 (Ala.1978) (parties must be "substantially identical").

Collateral estoppel (issue preclusion) comes into play when the subsequent action is "upon a different claim or demand." *United States v. Moser*, 266 U.S. 236, 241, 45 S.Ct. 66, 67, 69 L.Ed. 262 (1924). *Accord Allen*, 449 U.S. at 94, 101 S.Ct. at 414; *Owen v. Miller*, 414 So.2d 889, 891 (Ala. 1981); *Wheeler*, 364 So.2d at 1199. In such case, "the inquiry is whether the point or question presented for determination in the subsequent action is the same as that litigated and determined in the original action." *Moser*, 266 U.S. at 241, 45 S.Ct. at 67; *accord Montana*, 440 U.S. at 153, 99 S.Ct. at 973; *Owen*, 414 So.2d at 891; *Wheeler*, 364 So.2d at 1199. In essence, the functional difference between claim preclusion and issue preclusion is that while only the former can operate to prevent litigation of a matter that has never been decided, both prevent relitigation of an issue of fact or law that has already been necessarily decided as part of a valid, final judgment. *See Migra*, 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1; Commentary, *Issue Preclusion in Alabama*, 32 Ala. L.Rev. 500, 501–02 (1981).

### 1. Preclusive Effect of 1967 and 1968 Decrees

■ Defendants' insistence that the 1967 and 1968 decrees bar Stone's claim fails for two reasons. First and foremost, those decrees were set aside by *Gulf American*, a court of competent jurisdiction, *see infra*, at 1060, insofar as they operated to preclude Stone from sharing in Williams, Sr.'s estate. 554 So.2d at 369. A judgment vacated or set aside has no preclusive effect. *See Webb v. Webb*, 263 Ala. 607, 83 So.2d 325, 329 (1955) (reversal of decree "had the effect of annulling it in its entirety and the case stood as though no decree had ever been rendered"); Commentary, 32 Ala.L.Rev. at 512. *See also* 1B J.M. Moore et al., Moore's Federal Practice ¶ 0.416[2], at 517 (2d ed. 1992) (judgment that has been vacated, reversed or set aside on appeal is deprived of all conclusive effect); Restatement (Second) of Judgments § 13 cmt. f (1980) (judgment ceases to be final for purposes of res judicata or collateral estoppel if set aside by trial court).

■ Second, the 1967 and 1968 proceedings did not reach the question of *paternity,* holding that even if Williams, Sr. was Stone's father, she was not his heir only because of a failure to meet statutory legitimation requirements. Paternity was not decided until the trial court in the *Gulf American* litigation made such a determination, in Stone's favor, in 1987. Thus, whatever preclusive effect the 1967 and 1968 decrees had was limited to heirship.

■ Intervening changes in federal constitutional and Alabama law regarding inheritance rights of illegitimate children would not alone provide a basis for Stone to relitigate this question. *See, e.g., Moser,* 266 U.S. at 242, 45 S.Ct. at 67 (issue preclusion applies to mixed questions of law and fact); Commentary, 32 Ala.L.Rev. at 513 (change in law as result of judicial decisions generally provides no basis for relitigation if change based on application of law to facts); *Trimble v. Bramco Prods., Inc.,* 351 So.2d 1357, 1362 (Ala.1977). Nonetheless, because the Montgomery County Circuit Court did not have before it full and complete information relevant to the question of whether Stone qualified as an heir, its decision, based on misinformation, does not bar "relitigation" of the preliminary question of paternity. *See Montana,* 440 U.S. at 159, 99 S.Ct. at 976 (change in facts essential to a judgment renders collateral estoppel inapplicable); *Jackson v. DeSoto Parish Sch. Bd.,* 585 F.2d 726, 729 (5th Cir.1978) (modification of significant facts creating new legal conditions allows relitigation). *See also Montana,* 440 U.S. at 164 n. 11, 99 S.Ct. at 979 n. 11 (redetermination of issues warranted if there is reason to doubt the quality, extensiveness or fairness of procedures followed in prior litigation); Restatement (Second) of Judgments § 73(2) (1980) (judgment may be modified if there has been such a substantial change in circumstances that giving continued effect to it is unjust).

Hence, plaintiff is not barred either by *res judicata* or collateral estoppel from litigating the question of her paternity. Whether the legal effect (heirship) of such a determination should be analyzed according to then-existing or present Alabama law is a separate question we will discuss in a moment.

### 2. *Preclusive Effect of* Gulf American

We turn now to analyze whether *Gulf American's* determination that Stone is the natural child of Williams, Sr. is binding on defendants. There is no serious dispute that Stone's status as a biological child of Williams, Sr. was actually litigated, determined and necessary to the judgment. Accordingly, we need not be concerned with whether the present suit and the Alabama suits are based on the same cause of action, *i.e.,* whether the preclusive effect of *Gulf American* is to be analyzed under principles of *res judicata* or collateral estoppel. Defendants assert, though, that the decision is not "final" for purposes of preclusion because *Gulf American* remanded the matter for further proceedings. *See* 554 So.2d at 370. Alabama courts, like federal courts, generally apply the same test of finality for purposes of preclusion as they do for appealability. *See First Ala. Bank of Montgomery v. Parsons Steel,* 825 F.2d 1475, 1480 (11th Cir.1987), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988); Commentary, 32 Ala.L.Rev. at 511. Defendants contend that the *Gulf American* decision is not final for purposes of appealability, and therefore is not final for purposes of preclusion.

Defendants are correct that ordinarily a decision accompanied by a remand with orders to proceed consistent with the opinion is not "final." *See Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 476–77, 95 S.Ct. 1029, 1036–37, 43 L.Ed.2d 328 (1975). But, such a decision generally is appealable when the *issue* to be addressed on appeal is final in the sense that it is not subject to further modification on remand. *Compare id.* at 485, 95 S.Ct. at 1041 (finality for purposes of review of state court judgments under then 28 U.S.C. § 1257 exists where, despite remand, decision "is plainly final on the federal issue and is not subject to further review in the state courts") *with San Diego Gas & Elec. Co. v. City of San Diego,* 450 U.S. 621, 632–33, 101 S.Ct. 1287,

1294–95, 67 L.Ed.2d 551 (1981) (finding of "taking" not appealable as final until amount of compensation fixed). *See also Woodruff v. Smith,* 127 Ala. 65, 28 So. 736, 739–40 (1900) (in action to settle claims to land, decree in which every question affecting the rights and equities of the parties was fully determined, leaving nothing to do but shape appropriate relief, is final for purposes of appeal).

▪ Similarly, a judgment is considered final for purposes of issue preclusion if "the conclusion in question is procedurally definite." Restatement (Second) of Judgments § 13 cmt. g (1980). *See also id.* cmt. b (for *res judicata,* judgment ordinarily considered final if not contingent and represents completion of all steps in the adjudication short of execution or enforcement); *Zdanok v. Glidden Co.,* 327 F.2d 944, 955 (2d Cir.) (Friendly, J.) (collateral estoppel does not require a judgment which ends the litigation; once liability established, the mere fact that damages have not yet been fixed does not deprive the liability determination of any preclusive effect it might otherwise have), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). Alabama courts have similarly assessed finality for purposes of preclusion by reference to "the quality of the judgment as to the issue ... adjudicated." *Sterling Oil of Okla., Inc. v. Pack,* 291 Ala. 727, 287 So.2d 847, 861 (1973) (per curiam) (grant of partial summary judgment entitled to preclusive effect). The decision in *Gulf American* being conclusive on the question of Stone's paternity, leaving open only the questions of appropriate relief and the manner in which the holding was to be enforced, is "final" for purposes of preclusion.

Consequently, *Gulf American*'s determination on paternity is not open to attack by defendants, if they are bound by that judgment. As noted, the preclusive effect of the *Gulf American* decision must be assessed under Alabama law. If defendants are so bound, due process proscribes giving effect to that determination unless the party (or its privy) against whom the prior adjudication is being asserted had a full and fair opportunity to litigate the issue in that prior adjudication. *See Kremer,* 456 U.S. at 480–81 & n. 22, 102 S.Ct. at 1896–97 & n. 22; *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329–33, 99 S.Ct. 645, 650–53, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Labs., Inc. v. University of Ill. Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971).

▪ *Williams, Jr.:* Alabama courts, in accordance with general principles of law, require that before one may be bound by a determination in a prior suit he or she must have had (or been in privity with one who had) "an interest sufficiently close to the matter litigated and ... an adequate opportunity to litigate the issue in the prior proceeding." *Owen,* 414 So.2d at 891 (nonparty to proceeding who was present and testified at that proceeding bound by outcome). Of importance is whether the "party" against whom estoppel is asserted had an opportunity to make an argument regarding the issue litigated, so that his or her interest in the matter was passed upon in the court's prior disposition. *See id.* at 891–92. For purposes of preclusion,

> Alabama courts recognize that certain persons, *although not officially named or brought before the court, should be treated as parties* and go beyond the record to include those persons who took part in the trial ... The rationale ... is that the nonparty, in actuality, had a fair opportunity to litigate his interest in the issue in the first action.

Commentary, 32 Ala.L.Rev. at 519 (emphasis added; internal footnotes omitted). *See Hudson v. Wright,* 164 Ala. 298, 51 So. 389, 391 (1909) (court "will look beyond the record and treat *as parties* all who in fact are found to have acted a part ... whether their interference was irregular or not") (emphasis added); *Moody v. Moody,* 339 So.2d 1030, 1034 (Ala.Civ.App.) (same), *cert. denied,* 339 So.2d 1035 (Ala.1976). As to Williams, Jr., this is satisfied here.

▪ Williams, Jr., Wesley Rose and Roy Acuff instituted the state court action that culminated in the *Gulf American* decision. The issue of paternity litigated in the trial court in that action was resolved in

favor of Stone. This record, and *a priori*, Williams, Jr.'s contentions, were before the *Gulf American* Court. That Williams, Jr. was not officially named as a party is not dispositive on the question of whether his interests were known to and considered by the Alabama Supreme Court. *See Owen*, 414 So.2d at 891–92; *Hudson*, 51 So. at 391; *Moody*, 339 So.2d at 1033–34.

*Gulf American* regarded Stone's third-party complaint seeking to reopen the estate as an action *in rem*, "not essentially different from the prayer of Williams, Jr., for relief in his declaratory judgment action." 554 So.2d at 373. Thus, it held "the claims of the various parties [were] so intertwined and the factual situation so unique that notions of fairness require[d] that the entire controversy be settled in one proceeding." *Id.* at 374. This included Williams, Jr.'s interests. *See id. See also City of Tuscaloosa v. Fair*, 232 Ala. 129, 167 So. 276, 282–83 (1936) (where defendants' interests are not separate and independent, reversal of verdict as against one requires reversal of otherwise valid verdict against the other). The Alabama Supreme Court explicitly noted "the position advanced by Williams, Jr., that Stone was not an 'heir' was adequately presented." 554 So.2d at 375. Since Alabama's highest court has effectively determined that Williams, Jr. is properly bound by its decision, we may not conclude otherwise. *See Kremer*, 456 U.S. at 481–82, 102 S.Ct. at 1897–98 (§ 1738 does not allow federal courts to employ their own rules in determining the preclusive effect of state court judgments; federal court is commanded to accept the rules chosen by the state from which the judgment is taken).

Williams, Jr. further insists that the Alabama Supreme Court was not a court of competent jurisdiction, and therefore its judgment is not entitled to preclusive effect. This argument derives from the fact that, under Alabama law, the failure to file an appeal is *jurisdictional. See, e.g., Threadgill v. Birmingham Bd. of Educ.*, 407 So.2d 129, 131–32 (Ala.1981); *Stewart v. Younger*, 375 So.2d 428 (Ala.1979) (per curiam). It is thus argued that Stone's failure to appeal the grant of summary judgment in favor of Williams, Jr. deprived the Alabama Supreme Court of jurisdiction over him, which was required in order to pass on the question of whether Stone was entitled to a share of Williams, Sr.'s estate. Again, *Gulf American* decided it had *in rem* jurisdiction to determine whether Stone was entitled to share in the estate. *See* 554 So.2d at 371–75. In deciding that Stone was entitled to share, it necessarily adjudicated paternity and concluded it had jurisdiction over the parties affected by the judgment. *See id.; see also City of Huntsville v. Goodenrath*, 13 Ala.App. 579, 68 So. 676, 682 (judgment *in rem* is conclusive with respect to matters upon which such judgment is necessarily founded), *cert. denied*, 194 Ala. 568, 69 So. 629 (1915).

Because a court's adjudication is conclusive only if it had power to pass on the merits of the action, *see Underwriters Nat'l Assurance*, 455 U.S. at 704–05, 102 S.Ct. at 1365–66; *Williams v. North Carolina*, 325 U.S. 226, 229, 65 S.Ct. 1092, 1094–95, 89 L.Ed. 1577 (1945), one may collaterally attack the subject matter or *in personam* jurisdiction of the court rendering a judgment put forth as preclusive. *See, e.g., Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 78, 60 S.Ct. 44, 50, 84 L.Ed. 85 (1939). Nonetheless, principles of preclusion apply equally to jurisdictional matters. *Id.; Underwriters Nat'l Assurance*, 455 U.S. at 706 & n. 13, 102 S.Ct. at 1367 & n. 13. Consequently, our function is not to decide *de novo* the question of the rendering court's jurisdiction, but rather merely to ask whether "those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee v. Duke*, 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963). *See Williams*, 325 U.S. at 230, 65 S.Ct. at 1095; *see also Underwriters Nat'l Assurance*, 455 U.S. at 706–08 & n. 15, 102 S.Ct. at 1366–68 & n. 15 (any doubts over whether first court purported to exercise subject matter and/or personal jurisdiction definitively settled by that court's subsequent decision on petition for instructions). *Gulf American* purported to exercise juris-

diction over the subject matter of the estate and over Williams, Jr. In light of the character of the dispute and its discussion of the matter on the Application for Rehearing, the issue was fully and fairly decided. *Cf. Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950) (whether due process afforded turns in part on "the nature of the case").

■ Any challenge to the Alabama Supreme Court's jurisdiction—whether *in personam* or subject matter—once adequately addressed and determined by that court, lay only on direct review. *See Underwriters Nat'l Assurance*, 455 U.S. at 708–09 n. 15, 102 S.Ct. at 1367–68 n. 15; *Treinies*, 308 U.S. at 77 & n. 21, 60 S.Ct. at 50 & n. 21. *Cf. Hedrick v. Grimes Motor Co.*, 275 Ala. 322, 154 So.2d 677, 681 (1963); *see also* Restatement (Second) Conflict of Laws §§ 96, 97 (1969). Since the United States Supreme Court denied Williams, Jr.'s petition for certiorari, he may not now collaterally attack the jurisdictional aspects of the *Gulf American* decision any more than he may attack it on the merits. *See generally* D. Dobbs, *The Validation of Void Judgments: The Bootstrap Principle, Part II—The Scope of Bootstrap*, 53 U.Va.L.Rev. 1241, 1241–44 (1967).

The same reasoning applies to Williams, Jr.'s due process contentions that were also addressed in *Gulf American*. *See* 554 So.2d at 371; *Williams v. Adkinson*, 792 F.Supp. 755 (M.D.Ala.1992) (dismissing for lack of federal jurisdiction Williams, Jr.'s action against Stone and state court trial judge presiding over remand in *Gulf American* suit, concluding that Williams, Jr.'s federal claims were "inextricably intertwined" with his state claims presented to, and rejected by, Alabama Supreme Court). *See also Kremer*, 456 U.S. at 481, 102 S.Ct. at 1897 (state proceedings need do no more than satisfy the minimal procedural requirements of due process to qualify for full faith and credit). Thus, *Gulf American* is valid for purposes of preclusion and Williams, Jr. is a "party" bound thereby.

■ *Other Defendants:* Neither the Berlin nor the other Acuff/Rose defendants were involved in the third-party action leading to *Gulf American* and consequently may only be bound by findings of fact made in that case if they are found to be (or, more properly, if an Alabama court would find them to be) in privity with a party bound by such findings. "Privity," as used in Alabama for purposes of preclusion, encompasses a non-party whose "interests were adequately represented by a party in the prior suit, and [whose] relationship [with the party to the prior suit] is not so attenuated as to violate due process." *Whisman v. Alabama Power Co.*, 512 So.2d 78, 82 (Ala.1987). *See* Commentary, 32 Ala.L.Rev. at 521 (recent tendency of Alabama courts is to analyze privity as an identity of interests). We think the relationship of the other defendants vis-a-vis Williams, Jr. satisfies this test.

■ The Alabama courts generally have given final judgments broad preclusive effect:

Judgments can bind persons not party (or privy) to the litigation in question where the nonparties' interests were represented adequately by a party in the original suit.... A person may be bound by a judgment even though not a party to a suit *if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative.*

*Century 21 Preferred Properties, Inc. v. Alabama Real Estate Comm'n*, 401 So.2d 764, 770 (Ala.1981) (plurality opinion) (emphasis added). The term "privity" is used to encompass both those who share successive or mutual relationships to rights of property, and those who have an identity of interest in the subject matter of the litigation. *See, e.g., Sosebee v. Alabama Farm Bureau Mut. Casualty Ins. Co.*, 56 Ala. App. 334, 321 So.2d 676, 678 (Ala.Civ.App. 1975). As used in the cited passage, the term denotes the former class of nonparties which may be bound by a prior adjudication. Whether a nonparty has an "identity of interest in the subject matter of [the prior] litigation" as did a party, so as to be considered a privy bound thereby, "turns on whether the relationship between the

parties [is] close enough." *Hughes v. Martin,* 533 So.2d 188, 191 (Ala.1988) (per curiam) (quoting Commentary, 32 Ala.L.Rev. at 520–21). Thus, the question is whether the interests of the other defendants are sufficiently identical to the interests of Williams, Jr.—on the issue of Stone's paternity—and the defendants' relationship is close enough so as to conclude that those interests were adequately represented in the *Gulf American* litigation.

*Century 21* is instructive. That case involved a challenge to an Alabama regulation concerning franchise advertising brought by certain real estate franchisees. The Alabama Real Estate Commission and its members, as defendants, claimed that a former federal court adjudication upholding the regulation was *res judicata,* as identical issues were raised. Despite the fact that the prior federal court litigation was brought by other franchisees, it was held that plaintiffs were bound by the prior decision. 401 So.2d at 770. Although the plaintiffs in the two actions were not identical, they were "substantially identical" and the present plaintiffs' "rights ... were adequately represented in the federal litigation [in] that identical parties in interest" litigated the question previously. *Id.*

The other defendants and Williams, Jr. are likewise "identical parties in interest" in relation to the issue as to which preclusion is asserted. The issue presented by the *Century 21* plaintiffs was precisely the same as that asserted by the plaintiffs in the prior federal court action—the validity of the Alabama regulation. Their interests—as real estate franchisees—were legally identical to those of the prior plaintiffs. And the state and federal court plaintiffs had a sufficiently close relationship to warrant binding both by the prior adjudication. So here. The issue contested by the defendants—Stone's paternity—is identical to that litigated by and determined against Williams, Jr. Their legal interest—the maintenance of the *status quo* concerning who is entitled to a share, whether it be in the estate as a whole or in copyright renewals specifically, in the legacy of Williams, Sr.—is identical as well. *Cf. Hughes,* 533 So.2d at 190–91 (joint tort-feasors have substantially identical legal interests for purposes of preclusion on question of negligence). Hence, Williams, Jr. and the remaining defendants have a sufficiently close relationship to warrant binding the latter by the prior adjudication. *See Southwest Airlines Co. v. Texas Int'l Airlines,* 546 F.2d 84, 95, 98 (5th Cir.) ("privity" denotes legal conclusion that the relationship is sufficiently close to afford application of the principle of preclusion; preclusion is appropriate as to those whose interests were represented adequately by a party in the original suit where the original party represented the only legal interests held by second party), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977). Whatever adverse legal interests the Acuff/Rose and Berlin defendants may have *inter sese,* their legal interest concerning Stone's claimed paternity is identical.

Defendants assert that preclusion is nonetheless inappropriate as to them because the "subject matter" of the prior adjudication was Stone's ability to share in Williams, Sr.'s estate. Here the "subject matter" is Stone's ability to claim renewal copyrights in Williams, Sr.'s compositions. This distinction has only superficial appeal—the question is not whether the subject matter of the suits is identical, but whether the parties have an identical interest in that subject matter. *Cf. Owen,* 414 So.2d at 891. The *Gulf American* suit centered on Stone's ability to inherit from Williams, Sr. Her entitlement to copyright renewals, in turn, depends on her ability to inherit. *See infra,* at 1064–67. It is therefore no answer to say that the defendants other than Williams, Jr. claim no interest in the estate, as such, of Williams, Sr. To stress the distinction in the subject matter of the two suits elevates form over substance. *Cf. Alabama Farm Bureau Mut. Casualty Ins. Co. v. Moore,* 349 So.2d 1113, 1115–16 (Ala.1977) (insured and insurer do not have identity of interests in defending tort action where for insurer to protect its own interests would result in increasing insured's liability). In terms of its legal effect on Stone's entitlement to

copyright renewals, her suit asserting a claim to Williams, Sr.'s estate is "identical." Further, as already pointed out, the legal interests of the other defendants and Williams, Jr. on the question of Stone's paternity are identical.

In sum, Williams, Jr. and the remaining defendants have parity of interests in the subject matter of the prior litigation—Stone's ability to inherit from Williams, Sr. *See Southwest Airlines*, 546 F.2d at 100 n. 58 (crucial factor is congruence of legal interests); *see also* A. Vestal, *Preclusion/Res Judicata Variables: Parties*, 50 Iowa L.Rev. 27, 45, 60 (1964) (emphasis in privity analysis is upon the policy of ending litigation where there has been a fair trial of one's interests; preclusion appropriate where party in second suit has no greater interest than did participant in first suit). Accordingly, these defendants are bound as is Williams, Jr. by the prior adjudication of this issue.

### 3. *Due Process Concerns*

Defendants argue that due process bars the application of preclusion to them on the question of Stone's status as a biological child of Williams, Sr. It is true that a judgment will not be given preclusive effect if " 'the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court.' " *Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983) (quoting *Allen*, 449 U.S. at 101, 101 S.Ct. at 418). But this principle is of no avail to these defendants. They are bound by *Gulf American* not because they were parties, but because they are in "privity" with a party. A privy is one who did not itself litigate the issue decided in the first proceeding. *See* Vestal, 50 Iowa L.Rev. at 60; *cf.* Restatement (Second) of Judgments § 41(2) (1980). But this is not violative of due process. *Cf. Martin v. Wilks*, 490 U.S. 755, 763, 109 S.Ct. 2180, 2185, 104 L.Ed.2d 835 (1989) (unless duly summoned to appear, " 'a person *not a privy* may rest assured that [the] judgment ... will not affect his legal rights' ") (quoting *Chase Nat'l Bank v. Norwalk*, 291 U.S. 431, 441,

54 S.Ct. 475, 479, 78 L.Ed. 894 (1934)) (emphasis added); *Parklane Hosiery*, 439 U.S. at 327 n. 7, 99 S.Ct. at 649 n. 7 (due process violated if judgment binding on a litigant who was not a party *or in privity* and therefore never had an opportunity to be heard).

Due process does not protect the ability of one not a "stranger[ ] to [a prior] proceeding[ ]" subsequently to bring suit or go to trial, but rather protects that party's right to have his or her legal interests presented to and considered by a court of competent jurisdiction in adjudicating matters that will impact upon those legal interests. *See Martin*, 490 U.S. at 762 & n. 2, 109 S.Ct. at 2184 & n. 2; *Southwest Airlines*, 546 F.2d at 102. *Cf. Hansberry v. Lee*, 311 U.S. 32, 44–5, 61 S.Ct. 115, 119–20, 85 L.Ed. 22 (1940) (due process not satisfied where those allegedly in privity with party in prior suit had potentially conflicting interests). In order to foster finality and respect for judicial decisions, due process cannot be held to require matters that have already been considered by a court of competent jurisdiction to be passed upon again at the behest of one whose legal interests were fairly represented in the prior proceeding.

In the end, estoppel determinations turn on the court's sense of justice and equity. *Blonder–Tongue*, 402 U.S. at 334, 91 S.Ct. at 1445. Considering the countervailing interests at stake, *see Lalli v. Lalli*, 439 U.S. 259, 268, 99 S.Ct. 518, 524, 58 L.Ed.2d 503 (1978) (plurality opinion) (states have strong interest in determining disposition of property at death), and the equities at hand, we do not believe it fundamentally unfair or incompatible with notions of justice or due process to bind defendants by *Gulf American*'s finding of paternity. *Cf. Gray v. Richardson*, 474 F.2d 1370, 1372–73 (6th Cir.1973) (in action for entitlement to social security benefits, Secretary of Health, Education and Welfare should accept determination of paternity previously made by state court of competent jurisdiction in suit litigated by parties with opposing interests). *See also* Restatement (Second) of Judgments § 31 cmt. b (1980) (in

the absence of "strongly countervailing interests" the determination of status in a proceeding for that purpose is conclusive on all persons). In short, the unique character of this case and the relationship between Williams, Jr. and the remaining defendants that justify classifying them as "privies" are sufficient to withstand a due process challenge.

### III  Copyright Renewals

We have thus concluded that plaintiff's action is not barred by the statute of limitations and that defendants may not challenge the determination of the Alabama Supreme Court that Stone is the natural child of Williams, Sr. Defendants nonetheless contend that Stone is not entitled to a share of copyright renewals. Although this question was not passed upon by the district court we address it because the facts are undisputed and the legal question presented in this seven-year-old litigation has been fully briefed by the parties.

Both § 24 of the 1909 Act, as amended, and § 304(a) of the 1976 Act state that if the author is not living when the original copyright term expires, then the author's "widow, widower, or children" shall be entitled to the copyright renewal. The 1909 Act governs Stone's entitlement to copyright renewals for works already in their renewal term as of January 1, 1978, the effective date of the 1976 Act. The 1976 Act governs Stone's entitlement to copyright renewals for previously copyrighted works not yet in their renewal term as of January 1, 1978. *See* B. Ringer, "Renewal of Copyright," *Studies on Copyright* 503, 577 (1960). Under the 1909 Act copyrights are entitled to a 28–year renewal term, and the 1976 Act provides an additional 19–year renewal term. *See* 17 U.S.C. § 304(b). For copyrights subsisting under the 1909 Act in their original term as of January 1, 1978, upon expiration of the 28–year original term, the copyright may be renewed for an additional 47 years. *Id.* § 304(a). *See generally* 2 Nimmer § 9.01[C], at 9–18–21.

For works copyrighted after January 1, 1978 statutory protection extends for a continuous term equal to the life of the author plus 50 years, 17 U.S.C. § 302(a), with a right of termination, *id.* § 203, designed to provide for the continuing support of an author and his or her dependents by allowing them to avoid the harshness of earlier unremunerative transfers. *See* 3 Nimmer § 11.01, at 11–2–3. The termination right also extends to the "new" 19–year renewal term for works copyrighted under the 1909 Act, whether renewal was registered under the 1909 or 1976 Act. *See* 17 U.S.C. § 304(c). *See also Larry Spier, Inc. v. Bourne Co.*, 953 F.2d 774, 778 (2d Cir.1992) (§ 304(c) is designed to protect property rights of widows and children in copyrights). Some of Williams, Sr.'s works are subject to the 47–year renewal period under the 1976 Act, others to the 28/19–year period under the 1909/1976 Act "merger."

### A.  The 1909 Act

■ Defendants' position is that even if Stone is a natural child of Williams, Sr., she is not a "child" for purposes of either the 1909 or 1976 Acts. The 1909 Act did not define "child" for purposes of determining the class of beneficiaries entitled to claim renewal copyrights under § 24. In *De Sylva v. Ballentine*, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), the Supreme Court held that whether an illegitimate child is entitled to copyright renewals is to be determined according to state law. *Id.* at 580–81, 76 S.Ct. at 979–80. The Court noted that Congress' aim in awarding an author's "widow, widower or children" copyright renewals was to provide for them after the author's death. *Id.* at 582, 76 S.Ct. at 980–81; *see also Fred Fisher Music Co. v. M. Witmark & Sons*, 318 U.S. 643, 650–51, 63 S.Ct. 773, 776–77, 87 L.Ed. 1055 (1943) (discussing purpose of 1831 Act, 4 Stat. 436, which, for the first time, provided for passing of renewal term to author's widow or children if author failed to survive to renewal). Thus, as to those persons designated as beneficiaries under the statute, it "is really a question of the descent of property, and ... the controlling question under state law should be whether the child would be an heir of the author" entitled to claim under intestacy statutes.

*De Sylva,* 351 U.S. at 582, 76 S.Ct. at 980–81.

There is no dispute that Alabama law—as Williams, Sr.'s domicile at his death—governs whether Stone is entitled to claim as an heir. Nor is there any dispute as to *what* the law of Alabama provides concerning intestate distribution to illegitimate children. Rather, the issue is *which* Alabama law concerning intestate distribution to illegitimate children controls.

Defendants urge that Stone's right to renewals under the 1909 Act must be assessed by Alabama law in effect as of January 1, 1978. Prior to 1979 Alabama provided for inheritance by an illegitimate child through its father only if 1) the parents were later married and the father recognized the child, or 2) there was a written declaration by the father, attested by two witnesses, and filed with the judge of probate. *Gulf American,* 554 So.2d at 364; *see also Everage v. Gibson,* 372 So.2d 829, 833 (Ala.1979) (adding as third avenue an adjudication of paternity), *cert. denied,* 445 U.S. 931, 100 S.Ct. 1322, 63 L.Ed.2d 765 (1980). Since Stone meets neither of these conditions, defendants insist, she is not an heir under Alabama law as it existed in 1978 and therefore is not entitled to copyright renewals. In other words, though the fraud perpetrated on Stone prevented her from asserting her rights until 1979, her entitlement must be assessed under the law in existence while she was being victimized. We are unable to adopt this reasoning. *Compare Jerry Vogel Music Co. v. Edward B. Marks Music Corp.,* 425 F.2d 834, 836 (2d Cir.1969) (Friendly, J.) (because prior transactions had been carried out *in good faith without knowledge* that illegitimate child might have claim to renewal copyrights, current law should not be applied); *Collier v. Shell Oil Co.,* 534 So.2d 1015, 1018 (Miss.1988) (*bona fide* purchasers for value not subjected to divestment of title by virtue of change in law regarding inheritance rights of illegitimate children).

As a general rule, a court must apply the law regarding intestate succession as it exists when the case comes before it for decision. *See Reed v. Campbell,* 476 U.S. 852, 856, 106 S.Ct. 2234, 2237, 90 L.Ed.2d 858 (1986) (law to be applied concerning illegitimate child's ability to inherit is that governing at time claim to decedent's estate is made—when court required to make a decision). *See also Everage,* 372 So.2d at 833–834 (applying law regarding illegitimate child's ability to inherit in effect at time of decision). Not until 1979 could the question of Stone's entitlement to a share of Williams, Sr.'s estate properly—that is, not clouded by fraud and incomplete information—come before the Alabama courts. We are not faced with the "retroactive" application of a "new" law because there never was a fair application of the "old" law.

◼ Once the Alabama Supreme Court determined that Williams, Sr.'s estate should be reopened, 554 So.2d at 352–63, it applied current Alabama law, and concluded Stone was an heir entitled to inherit. *Id.* at 367 & n. 23. *See Cotton v. Terry,* 495 So.2d 1077, 1079 (Ala.1986) (per curiam) (paternity of illegitimate child may be established after the death of the father if supported by clear and convincing evidence). Because Stone's entitlement to copyright renewals under the 1909 Act turns on her ability to inherit under state intestacy law, *De Sylva,* 351 U.S. at 580–82, 76 S.Ct. at 979–81, and since the interpretation of a state's laws by that state's highest court is binding on us, *see, e.g., Groppi v. Wisconsin,* 400 U.S. 505, 507, 91 S.Ct. 490, 491, 27 L.Ed.2d 571 (1971); 28 U.S.C. § 1652, plaintiff is entitled to an appropriate share of copyright renewals for copyrights renewed under the 1909 Act. It would be anomalous and contrary to the state-law approach of *De Sylva* to hold that though Stone is entitled to a share of Williams, Sr.'s estate, she is not entitled to a share of copyright renewals.

Not surprisingly, the Berlin defendants object to what they see as the retroactive application of a statute to determine membership in the closed class of persons entitled to an interest in the 1909 Act renewal copyrights. But their argument rests on a faulty premise—this is not a case of a *subsequent statutory provision* being uti-

lized to determine membership in a "closed" class. Rather, here the class was found to be improperly, *i.e.*, not yet, closed. Moreover, this finding was not based on a subsequent law redefining who should be in the class, but instead on the *fraud* perpetrated in originally determining which persons were in the class. Once reopened, the new law was properly "utilized" to determine membership in the now open class of those entitled to share. *Cf. Reed*, 476 U.S. at 856, 106 S.Ct. at 2237; *Collier*, 534 So.2d at 1018.

The Acuff/Rose defendants similarly insist that the Alabama Court improperly applied *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) (invalidating on equal protection grounds probate law allowing illegitimate children to inherit through their fathers only if parents subsequently married and father acknowledged child) retroactively as a wedge to reopen Williams, Sr.'s already closed estate thereby giving Stone a chance to qualify as an heir. The Alabama Court, defendants continue, then created a duty of disclosure based on Stone's possible heirship, which it found breached by a legal fraud.

This reasoning misreads *Gulf American.* Its finding of a "legal duty underpinning the determination of legal fraud" had nothing to do with the ability of an illegitimate child to inherit under present law as opposed to then-existing law. Rather, in addressing Stone's claim that there had been a conspiracy "to keep certain facts relating to her existence, identity, and potential claim to the estate of Hank Williams concealed from the court," the Court found

> substantial evidence from which a factfinder could conclude that third-party defendants Robert Stewart and administratrix Irene Smith and others withheld from the court before and during the 1967 and 1968 proceedings material facts concerning the issue of Stone's *paternity.*

554 So.2d at 352 (emphasis added). The legal duty to disclose such information was based on the fact that

> both Stewart and Smith had a legal obligation, *as either the attorney or admin-*

*istrator of the estate or because of the particular circumstances involved,* to advise the court at the earliest possible date that the Stone child existed and possessed potential claims to the estate as an heir, being a natural child of the deceased ... *Because the corpus of the estate involved copyright renewals, and because illegitimates could share in such rights under federal law, the "particular circumstances" of this case make the obligation a weightier one.* The evidence shows that Stewart, as administrator, and as attorney for Smith, knew that the child had a substantial claim to the copyright renewals.... We cannot say that Smith's and Stewart's concealment did not affect the judgments ultimately rendered in the 1967 and 1968 proceedings ...

*Id.* at 359–60 (second emphasis in original).

The first italicized statement lays out the legal duty which was breached. The second italicized statement does not go to the *existence* of the duty to disclose, but rather, quite plainly, to its weight. This weight, moreover, stemmed from the law *as it existed in 1967 and 1968.* At that time *De Sylva* made quite clear that illegitimate children *could* share in copyright renewals. This is all *Gulf American* stated. *See also supra*, n. 1. Contrary to defendants' suggestion, the duty upon which the finding of fraud was based was a duty existing and as defined in 1967 and 1968, not a duty as defined in 1979 and then applied retroactively to the 1967 and 1968 proceedings.

*De Sylva* directs federal courts to assess entitlements to copyright renewals under § 24 by reference to state intestacy law. In determining Stone's entitlement to Williams, Sr.'s estate the Alabama Supreme Court applied present law. Under present Alabama law, Stone may inherit from Williams, Sr.'s estate because she is a natural child who was not "adopted-out" at the time of his death. *Gulf American*, 554 So.2d at 368–69. *See also Hill & Range Songs, Inc. v. Fred Rose Music, Inc.*, 403 F.Supp. 420, 429 (M.D.Tenn.1975) (status as "widow" entitled to copyright renewals is

indefeasibly vested at moment of author's death and not affected by subsequent remarriage), *aff'd,* 570 F.2d 554 (6th Cir. 1978); 17 U.S.C. § 101 (definition of "widow" and "widower"). As a result, Stone is entitled to a share of copyright renewals under § 24 of the 1909 Act.

## B. *The 1976 Act*

As to works copyrighted prior to January 1, 1978 but which did not come into their renewal term until after that date, the determination of whether one is a "child" entitled to claim such renewals under § 304(a) involves somewhat different considerations. Although § 304(a), like § 24, provides that an author's "widow, widower or children" are entitled to copyright renewals, unlike the 1909 Act, § 101 of the 1976 Act defines children: "A person's 'children' are that person's immediate offspring, whether legitimate or not, and any children legally adopted by that person."

Defendants assert that by adding a definition of children Congress planned that the determination of one's status as a child, including for purposes of an entitlement to copyright renewals, would be a matter of federal law, supplanting the state law approach taken in *De Sylva.* Defendants further insist that in light of the purposes of copyright renewals—to provide support for an author's dependents—adopted-out children, such as Stone, should not be entitled to such renewals.

We do not think § 101 commands a uniform federal definition of "children" for purposes of copyright renewals under § 304(a). Concededly, Congress added the definition in § 101 so that "[t]he terms 'widow,' 'widower,' and 'children' [would be defined so as] to avoid problems and uncertainties that have arisen under the [1909 Act's] renewal section." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 125, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5741. This statement was made in discussing the termination provision that provides that a dead author's termination interest is owned and may be exercised by "his widow or her widower and his or her children or grandchildren." 17 U.S.C.

§ 203(a)(2). Significantly, "no reference is made to these statutory definitions in the House Report commentary upon § 304(a)." 2 Nimmer § 9.04[A][2], at 9–50. *See Larry Spier,* 953 F.2d at 779 (sections 203 and 304 involve different rights; references to legislative history discussing § 203 are therefore inappropriate in construing § 304). To the contrary, the legislative history explicitly states that § 304(a)

reenacts and preserves the renewal provision, now in section 24 of the [1909 Act], for all of the works [as of January 1, 1978] in their first 28–year term. A great many of the present expectancies in these cases are the subject of existing contracts, and it would be unfair and immensely confusing to cut off *or alter* these interests.... [T]he bill preserves the language of the [1909] renewal provision *without any change in substance.*

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 139, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5755 (emphasis added). *See also Frederick Music Co. v. Sickler,* 708 F.Supp. 587, 589 (S.D.N.Y.1989) (there is no pertinent distinction in language or intention between §§ 304(a) and 24; *Saroyan v. William Saroyan Found.,* 675 F.Supp. 843, 845 n. 7 (S.D.N.Y.1987) (§ 304(a) reenacted § 24 without substantive change), *aff'd mem.,* 862 F.2d 304 (2d Cir.1988).

The reason for this is plain. Congress recognized that a number of agreements had been entered into concerning renewal copyrights for works copyrighted under the 1909 Act at the time the 1976 Act went into effect. *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. 139–41, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5755–57. Because these agreements were made in light of *De Sylva* as to who would be entitled to copyright renewals, it would have created problems for persons acting in reliance on such agreements were the rules regarding entitlement changed. *See id. See also Mills Music, Inc. v. Snyder,* 469 U.S. 153, 170–72, 105 S.Ct. 638, 648–49, 83 L.Ed.2d 556 (1985) (Congress enacted 1976 Act with an awareness of industry practice). Hence, any congressional aim to implement a new federal policy regarding

"children" was held in abeyance for already-copyrighted works, and is relevant only for works copyrighted in the first instance under the 1976 Act. *Cf. Paige v. Banks,* 80 U.S. (13 Wall.) 608, 614–16, 20 L.Ed. 709 (1872) (assignee of rights to work copyrighted under 1790 Act entitled to renewal registered under 1831 Act despite intervening statutory change concerning ability of assignees to renew). As no such works are involved in the case at hand, we need not be concerned with whether Stone falls within § 101.

▨ Our conclusion that state law delineates the scope of the property right granted by § 304(a) is reinforced by reference to the 1976 Act's scheme regarding the 19–year extension for renewals. This extended term "represents a completely new property right." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 140, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5756; *see Stewart,* 495 U.S. at 225, 110 S.Ct. at 1762. Because assignments and other agreements concerning renewals for works copyrighted under the 1909 Act were entered into under the assumption that the renewal term would run for only 28 years, Congress extended the termination power of § 203 (governing works copyrighted after January 1, 1978 and transfers made by the author) to § 304(c) (governing transfers made prior to January 1, 1978 by either the author or § 24 or § 304(a) beneficiaries). *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. 140–41, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5756–57; *Stewart,* 495 U.S. at 224, 110 S.Ct. at 1762.

Although patterned after § 203, § 304(c)—governing who may exercise the termination privilege with respect to grants covering the extended term of renewal copyright—"is a close but not exact counterpart." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 140, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5756. Most importantly, "[t]he bill distinguishes between the persons who can terminate a grant under section 203 and those entitled to terminate a grant covering an extended term under section 304." *Id.* Specifically, the power to terminate a grant covering the extended renewal term made by other than the author is held by those "surviving person or persons who executed it." 17 U.S.C. § 304(c)(1). *Compare id.* § 203(a)(2).

Although this termination privilege is applicable to renewals registered under either the 1909 or 1976 Act, it does not extend to transfers made by renewal beneficiaries after January 1, 1978. The only transfers concerning renewal copyrights made prior to January 1, 1978 were executed by beneficiaries as determined by state law. *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. 140, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5756 (termination right in § 304(c) "extends to grants executed by those beneficiaries of the author *who can claim renewal under the present [i.e., 1909] law*") (emphasis added). Since these beneficiaries hold termination rights for renewals registered after January 1, 1978, and because it would be unworkable if the holder of a renewal was not the holder of the termination right concerning the same renewal, it must have been planned that beneficiaries of renewals registered under the 1976 Act be determined by state law. Hence, there is a distinction between those who can terminate a grant under § 203 (determined by § 101) and those who can terminate a grant covering the extended term, *i.e.,* hold the renewal copyright (determined by state law).

In short, for renewals registered under either the 1976 or 1909 Act, the extended-term termination right may be exercised only by those who executed a grant of the underlying property right prior to 1978. Those who held that property right with respect to 1909 Act renewals (and such an expectancy for 1976 Act renewals) were determined by state law. The holder of the termination right must be the holder of the underlying property interest. Thus, as the holder of the termination right for renewals registered under the 1976 Act must be assessed by reference to state law, the holder of the renewal itself also must be assessed by state law.

*Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104

L.Ed.2d 811 (1989), relied upon by defendants, is not to the contrary. *Reid* involved the interpretation of "work made for hire" in § 101 of the 1976 Act. As relevant here, the Court was faced with the question of whether the terms "employer," "employee" and "scope of employment" were to be given a uniform federal definition derived from the general common law of agency. *Id.* at 740, 109 S.Ct. at 2173. Noting that the "paramount goal" of the 1976 Act was to "enhance predictability and certainty of copyright ownership," *id.* at 749, 109 S.Ct. at 2177, the Court felt it "particularly appropriate" to establish a federal rule of agency. *Id.* at 740, 109 S.Ct. at 2173. As the above discussion demonstrates, in order to "enhance predictability and certainty of ownership" it is appropriate to retain the state-law approach to copyright renewals for works—unlike the one at issue in *Reid* —copyrighted under the 1909 Act.

We therefore hold that Stone is entitled to a share of copyright renewals under § 24 of the 1909 Act and under § 304(a) of the 1976 Act, despite having been adopted-out, since "children" for purposes of both sections is defined by state law. There remains a question as to what precisely that share is. The Berlin defendants claim that children take as a class, so that Berlin takes one-half and Stone and Williams, Jr. each take one-quarter. The Acuff/Rose defendants and Stone argue that all beneficiaries share equally, so that Berlin, Williams, Jr. and Stone each take one-third. This issue, not addressed in the district court, is remanded to it for decision.

## IV   Second Cause of Action

█ Stone's second cause of action alleges that defendants Milene–Opryland, Acuff–Rose, Fred Rose, Milene, Roy Acuff and Wesley Rose conspired with Irene Smith and Robert Stewart to prevent disclosure concerning her existence and concomitant claim to the estate of Williams, Sr. The parties do not dispute that under Alabama law a conspiracy cause of action arises not from the conspiracy itself, but from the wrong alleged to be the object of the conspiracy. *Ellis v. Zuck,* 409 F.Supp.

1151, 1159 (N.D.Ala.1976), *aff'd,* 546 F.2d 643 (5th Cir.1977) (per curiam); *Stuart Constr. Co. v. Vulcan Life Ins. Co.,* 291 Ala. 650, 285 So.2d 920, 923 (1973). It is also agreed that Alabama recognizes a cause of action for fraudulent suppression of a material fact. *See* Ala.Code § 6–5–102 (1975). As relevant here the crucial element necessary to state a claim based on fraudulent suppression of a material fact is a duty to disclose. *See, e.g., Bank of Red Bay v. King,* 482 So.2d 274, 284 (Ala.1985).

Stone's contention that such a duty existed derives from our holding in *Shapiro, Bernstein & Co.,* 223 F.2d at 253, that the holder of legal title to a renewal copyright holds it as constructive trustee for other co-owners. In dismissing this count, the district court concluded that Stone had not shown defendants owed a fiduciary duty to her. In support of this ruling, defendants point out that a constructive trustee is not a fiduciary, *see, e.g., Rochester Radiology Assocs. v. Aetna Life Ins. Co.,* 616 F.Supp. 985, 988 (W.D.N.Y.1985); Restatement of Restitution § 160 cmt. a (1937), and claim that without such a relationship there is no duty to disclose, and that their silence is not therefore actionable.

█ The obligation giving rise to the duty to disclose "may arise from the confidential relations of the parties *or from the particular circumstances of the case.*" Ala.Code § 6–5–102 (1975) (emphasis added). *See Holdbrooks v. Central Bank of Ala.,* 435 So.2d 1250, 1252 (Ala.1983) ("special circumstances" may give rise to duty of disclosure). Hence, that defendants may not have owed a fiduciary duty to plaintiff is not itself dispositive. Alabama courts have expressly noted that § 6–5–102 " 'recognizes that situations *other than those involving fiduciary relationships may give rise to a duty to disclose.*' " *King,* 482 So.2d at 284–85 (quoting *Jim Short Ford Sales, Inc. v. Washington,* 384 So.2d 83, 86–87 (Ala.1980)) (emphasis added). Determining whether the "particular circumstances of the case" justify imposition of the requisite duty requires an *ad hoc* examination of the facts because "a rigid approach is impossible, and, indeed,

the words of the statute itself counsel flexibility." *Id.* at 285. *Accord Berkel & Co. Contractors, Inc. v. Providence Hosp.*, 454 So.2d 496, 505 (Ala.1984). Accordingly, in assessing whether a duty exists by virtue of the particular circumstances, a court must examine the fiduciary *or other* relationship of the parties, the importance of the particular fact, the relative knowledge of the parties, and other circumstances of the case. *See Bettis v. Bettis*, 475 So.2d 847, 852 (Ala.1985); *Hall Motor Co. v. Furman*, 285 Ala. 499, 234 So.2d 37, 41 (1970). No such analysis was undertaken here.

We agree that this controversy is of a "unique character." *Gulf American*, 554 So.2d at 369. Accordingly, we cannot affirm the dismissal of this count predicated, as it was, on the lack of a fiduciary relationship. This cause of action must therefore be remanded to the district court for a full consideration of whether, despite the lack of a fiduciary relationship, there nonetheless existed a duty on the part of defendants to disclose. We express no opinion on this ultimate question or on defendants' asserted alternative bases for dismissal.

## CONCLUSION

The judgment appealed from is reversed, and the case is remanded for further proceedings consistent with this opinion.

