**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DONNA R. HOTALING; WILLIAM W.
HOTALING, JR.; JAMES P. MAHER;
DOROTHY C. SHERWOOD,
<u>Plaintiffs-Appellants,</u>

v.                                                                          No. 96-1399

CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-95-1112-A)

Argued: January 29, 1997

Decided: June 30, 1997

Before HALL and LUTTIG, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Reversed and remanded by published opinion. Senior Judge Butzner
wrote the majority opinion, in which Judge Luttig joined. Judge Hall
wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Hunter Craycroft Harrison, Jr., McLean, Virginia, for
Appellants. Michael Abbott Grow, VORYS, SATER, SEYMOUR &
PEASE, Washington, D.C., for Appellee.

**OPINION**

BUTZNER, Senior Circuit Judge:

In this appeal we hold that a library distributes a published work, within the meaning of the Copyright Act, 17 U.S.C.§§ 101 et seq., when it places an unauthorized copy of the work in its collection, includes the copy in its catalog or index system, and makes the copy available to the public. Because the district court ruled that these actions, by themselves, were insufficient to constitute distribution, we reverse the district court's summary judgment for the library and remand this case for further proceedings.

Summary judgment is appropriate only if the record reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We review the entry of summary judgment de novo, applying the same standard as the district court. Stone v. Liberty Mutual Ins. Co., 105 F.3d 188, 191 (4th Cir. 1997).

I

We present the facts in the light most favorable to the plaintiffs, Donna Hotaling, William Hotaling, Jr., James Maher, and Dorothy Sherwood (collectively the Hotalings). See Yarnevic v. Brink's, Inc., 102 F.3d 753, 756 (4th Cir. 1996). The Hotalings compiled and copyrighted a number of genealogical research materials. The validity of the copyrights is not at issue at this stage of the litigation. The Hotaling research materials were published in microfiche form and marketed by All-Ireland Heritage, Inc. At some point, most likely between 1985 and 1989, the defendant, the Church of Jesus Christ of Latter-Day Saints (Church), acquired a single legitimate copy of the microfiche and added it to its main library's collection in Salt Lake City, Utah. Sometime before 1992, the Church made microfiche copies of the works without the Hotalings' permission and sent the copies to several of its branch libraries, located throughout the country. The legitimately acquired copy had a black background, and the copies that were made by the Church had purple backgrounds.

2

In July, 1991, Donna Hotaling learned that the Church was making copies and placing them in its branch libraries. She contacted the Church and demanded that it stop this activity. After receiving her complaint, the Church recalled and destroyed many of the copies that it had made. According to the affidavits submitted by the Church, it did not make any copies after 1991, and there is no evidence to contradict that assertion.

In 1992, All-Ireland Heritage, Inc., sued the Church for copyright infringement based on the Church's copying and distribution of the Hotaling works. The district court dismissed the action because All-Ireland Heritage, Inc., did not own the copyright. As a result of the lawsuit, the Church became concerned that nine of its branch libraries might still possess copies of the Hotaling works. In October, 1993, the Church sent a memorandum to those branch libraries asking them to search their microfiche inventories for copies of the works. Six libraries found and returned one microfiche copy each. Upon receipt, the main library destroyed these copies.

In 1994, Donna Hotaling visited a branch library in Rhode Island. During her visit, she discovered a paper copy of one of the Hotaling works. According to the Rhode Island library director, a patron made the copy and left it in an infrequently used section of the library. The director had been unaware, and believes the other staff members had been unaware, of the copy's existence. When the copy was discovered, the director destroyed it. Prior to April 1992, the Rhode Island library had returned to the Church's main library the microfiche from which the patron apparently had made the paper copy.

In 1995, Donna Hotaling went to the Church's main library in Salt Lake City. There she observed that the library maintained a microfiche copy of the Hotaling works in its collection. She examined a portion of the microfiche and noticed that it had a purple background. The Church acknowledges that the single copy it keeps in its collection is one that it made. The library retained this copy, the Church explains, because the copy it originally acquired was destroyed inadvertently.

In August, 1995, the Hotalings filed this suit. Following discovery, the Church moved for summary judgment, arguing that the record did

3

not include any evidence of an infringing act within the three year statute of limitations. The district court granted the motion, and the Hotalings appealed.

II

The applicable statute of limitations bars civil copyright actions brought more than three years after the claim accrues. 17 U.S.C. § 507(b). "A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge." Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994). A party does not waive the right to sue for infringements that accrue within three years of filing by not asserting related claims that accrued beyond three years. Roley, 19 F.3d at 481 (quoting Hoey v. Dexel Systems Corp., 716 F. Supp. 222, 223 (E.D. Va. 1989)). In addition, under the prevailing view, a party cannot reach back, based on acts of infringement that accrued within the limitations period, and recover for claims that accrued outside the limitations period. Id.; see also Stone v. Williams, 970 F.2d 1043, 1049-50 (2d Cir. 1992); 3 M. Nimmer & D. Nimmer, Nimmer on Copyright,§ 12.05 at p.12-110 (1996); contra Taylor v. Meirick, 712 F.2d 1112, 1118-19 (7th Cir. 1983).

Hotaling filed this lawsuit in August, 1995. As a result, the statute of limitations bars recovery on claims that accrued before August, 1992. It is undisputed that any claim based on the Church's copying of Hotaling's works, which ceased by 1991, or on the original distribution of those copies from the main library to the branch libraries, which took place in or before 1991, is untimely. Those claims accrued in 1991 when Hotaling learned that the Church was copying and distributing her works.

In support of its summary judgment motion, the Church argued that there is no evidence of an infringing act within the limitations period. The district court found that the evidence, construed in Hotaling's favor, showed at most that the branch libraries possessed copies within the limitations period. The court granted the motion because it concluded that, without any evidence of copying or specific instances of distribution to the public within the limitations period, Hotaling could not prevail.

4

III

A copyright infringement is a violation of "any of the exclusive rights of the copyright owner." 17 U.S.C. § 501(a). One of those exclusive rights is the right "to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending[.]" 17 U.S.C.§ 106(3). Generally, as permitted by what is known as the first-sale doctrine, the copyright owner's right to distribute a copyrighted work does not prevent the owner of a lawful copy of the work from selling, renting, lending, or otherwise disposing of the lawful copy. 17 U.S.C.§ 109(a); see Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 52 (1993). For example, a library may lend an authorized copy of a book that it lawfully owns without violating the copyright laws. See H.R. Rep. No. 94-1476, § 109, at 79 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5693 and excerpted following 17 U.S.C.A. § 109. However, distributing unlawful copies of a copyrighted work does violate the copyright owner's distribution right and, as a result, constitutes copyright infringement. In order to establish "distribution" of a copyrighted work, a party must show that an unlawful copy was disseminated "to the public." 17 U.S.C. § 106(3); see National Car Rental v. Computer Associates, 991 F.2d 426, 434 (8th Cir. 1993); 2 Nimmer, § 8.11[A] at 8-137.

The Hotalings assert that the Church's libraries infringed their copyrights by distributing unauthorized copies of their works to the public. The libraries did not record public use of the microfiche. Consequently, the Hotalings concede that the record does not contain any evidence showing specific instances within the limitations period in which the libraries loaned the infringing copies to members of the public. But, they argue that proving the libraries held unauthorized copies in their collections, where they were available to the public, is sufficient to establish distribution within the meaning of the statute.

The Church, on the other hand, argues that holding a work in a library collection that is open to the public constitutes, at most, an offer to distribute the work. In order to establish distribution, the Church argues, the evidence would need to show that a member of the public accepted such an offer.

5

On this issue, we agree with the Hotalings. When a public library adds a work to its collection, lists the work in its index or catalog system, and makes the work available to the borrowing or browsing public, it has completed all the steps necessary for distribution to the public. At that point, members of the public can visit the library and use the work. Were this not to be considered distribution within the meaning of § 106(3), a copyright holder would be prejudiced by a library that does not keep records of public use, and the library would unjustly profit by its own omission.

IV

The Church argues that, even if holding a copyrighted work in a library's collection does constitute distribution within the meaning of the statute, there is no evidence showing that, within the limitations period, unauthorized copies of the Hotaling works were available to the public at any of its libraries. In response, the Hotalings point to the copy Donna Hotaling examined in Salt Lake City in 1995, the paper copy she found in Rhode Island in 1994, and the six copies that were returned and destroyed in 1993.

The Hotalings presented sufficient evidence to create a genuine issue over whether the copy Donna Hotaling examined in Salt Lake City was being distributed to the public in 1995. According to Donna Hotaling's personal observations, that copy was part of the library's collection, listed in the card file, and available to the public. In addition, she asserts that the copy she inspected had a purple background. Based on this evidence, a reasonable jury could conclude that the library held an unauthorized copy of the Hotaling works in its publicly-accessible collection within the limitations period. Because the evidence is sufficient to show that this potentially infringing copy was being distributed to the public as recently as 1995, it provides a timely basis for Hotaling's suit.

Although the Church acknowledges that its sole remaining copy is not the one it originally acquired from All-Ireland Heritage, Inc., it maintains that the remaining copy does not infringe Hotaling's copyright because it is a replacement copy, authorized by 17 U.S.C. § 108. The Copyright Act does permit libraries to make a replacement copy of a copyrighted work that has been published, but only if the library

6

"has, after a reasonable effort, determined that an unused replacement cannot be obtained at a fair price," § 108(c), and the library has complied with other pertinent provisions of § 108. Because the district court did not reach this issue, we decline to address it for the first time on appeal.

We turn next to the other copies that the Hotalings contend were distributed within the limitations period. Based on the evidence in the record, a reasonable jury could not conclude that the library distributed the Rhode Island copy to the public. According to the unrebutted affidavit of the Rhode Island library director, the paper copy was made and left behind by a library patron. Although the copy was later found in the library, there is no evidence to show that it was made part of the library's collection or listed in the library's catalog file.

Nor is there sufficient evidence to establish that the six copies returned and destroyed in 1993 were held out to the public within the limitations period. The evidence in the record does not reveal where the branch libraries found the six copies or whether those copies had been available for public use.

V

The Church asserts an alternative argument. It contends that, even if the library held an unlawful copy of the Hotaling works in its collection during the limitations period, any claim related to that copy accrued more than three years before this suit was filed in August, 1995. The Church points out that Donna Hotaling knew the libraries were adding the unlawful copies to their collections in 1991. With regard to the copy held in the main library's collection, the Church asserts that Donna Hotaling has known for several years that that copy, which had been made by the Church, was maintained in the library's collection as a replacement for the one it had purchased. In Donna Hotaling's deposition, she states that she was aware of the main library's replacement copy before 1992. Therefore, says the Church, the Hotalings action accrued prior to 1992, and the statute of limitations bars the 1995 suit.

The Church's argument is unpersuasive. "Each act of infringement is a distinct harm giving rise to an independent claim for relief." Stone

v. Williams, 970 F.2d at 1049. As we decided in Part III, distribution occurs, within the meaning of § 106, when a library holds a copy in its collection, lists the copy in its card file, and makes the copy available to the public. In this respect, the Church distributed the Hotaling microfiche as late as 1995. As we explained in Part II, a copyright holder may recover for infringements that occurred within three years before suit was filed, even if earlier claims were not pursued. Roley, 19 F.3d at 481. For this reason, the statute of limitations does not present a bar to the Hotalings' remaining claim.

Moreover, even if we were to accept the Church's argument, it would not change the outcome. If, as the Church says, actual use by the public must be shown to establish distribution, no one can expect a copyright holder to prove particular instances of use by the public when the proof is impossible to produce because the infringing library has not kept records of public use. To reiterate, a copyright holder should not be prejudiced in this manner, nor should an infringer benefit from its failure to keep records. In this case, the Church's library did not record instances of public use of the Hotaling microfiche.

VI

The Hotalings presented evidence that suggests the Church distributed at its main library one potentially infringing copy of the Hotaling works to the public within the limitations period. For that reason, dismissal of the suit based on the statute of limitations was inappropriate. Accordingly, we reverse and remand to the district court for adjudication of the Hotalings' surviving claim. If the district court finds that the Church complied with § 108, it should dismiss this action. If the court finds that the Church did not comply with § 108, it should conduct further proceedings on outstanding claims, including the validity of the copyright.

REVERSED AND REMANDED

HALL, Circuit Judge, dissenting:

I respectfully dissent. The statute specifically identifies the sorts of "distribution" that violate a copyright, and none of them fit this situation.

8

The owner of a copyright does not possess an exclusive right to "distribute" the work in any conceivable manner; instead, it has the exclusive right "to distribute copies ... of the copyrighted work to the public <u>by sale or other transfer of ownership, or by rental, lease, or lending</u>[.]" 17 U.S.C. § 106(3). The Church did not sell or give an infringing copy to anyone. The Church did not "rent" or "lease" a copy; indeed, the public may use the Church's libraries and all of their contents for free.

"Lending" is the only remaining candidate. Because they are for research, the libraries do not permit materials to be checked out and used by a member of the public off-premises. Do the libraries nonetheless "lend" a work each time a patron consults it? I think not. The patron might report that he "used" or "looked at" the work, but he would not likely say that it had been "lent" to him.

Moreover, in this case, the plaintiffs do not even have any evidence that anyone used or looked at an infringing copy during the limitations period. The majority suggests that such evidence might have existed had the libraries -- unlike all or nearly all others -- recorded each and every use of its millions of volumes. It might have, but it does not.

In closing, I should say that I have some sympathy for the result reached by the majority. A library's allowing on-premises public use of an unauthorized copy should probably infringe a copyright. Nonetheless, I believe that current law does not deem this sort of use an infringing "distribution," and that, in any event, there is no evidence of such use in this case.

I would affirm the judgment of the district court.

9