**Seth RESNICK, Paula Lerner and Michael Grecco**

v.

**COPYRIGHT CLEARANCE CENTER, INC.**

**No. 01–11520–RWZ.**

United States District Court, D. Massachusetts.

March 16, 2006.

See also 2003 WL 22176619.

Jonathan M. Feigenbaum, Phillips & Angley, Boston, MA, for Seth Resnick, Paula Lerner, Michael Grecco.

Elizabeth Stotland Weiswasser, Josh A. Krevitt, Kerry C. Foley, R. Bruce Rich, Sondra Roberto, Weil, Gotshal & Manges, LLP, New York, NY, Marie F. Mercier, William S. Strong, Amy C. Mainelli, Kotin, Crabtree & Strong, Boston, MA, for Copyright Clearance Center, Inc.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiffs Seth Resnick, Paula Lerner, and Michael Grecco are freelance photographers. Defendant Copyright Clearance Center, Inc. ("CCC") is a clearinghouse through which anyone may obtain the right to copy articles from various publications with whom CCC has agreements. Plaintiffs are the registered copyright holders of certain photographic images, which appear in articles whose copyrights are managed by CCC. They allege that CCC has facilitated and encouraged copyright infringement by allowing third parties to copy articles that contain plaintiffs' copyrighted images and that, in doing so, CCC has reaped significant profits. Their first amended complaint, filed in 2002, alleged contributory and vicarious copyright infringement (Count I), false advertising (Count II), and a state law claim (Count III); Count III was dismissed on defendant's motion to dismiss. Currently pending are (1) plaintiffs' motion to amend the amended complaint, (2) defendant's motion for summary judgment, and (3) plaintiffs' motion for partial summary judgment.

### I. *Plaintiffs' Motion to Amend the Complaint*

Plaintiffs' amended complaint, filed in February 2002, alleged false advertising under both the Lanham Act (Count II) and Mass. Gen. L. ch. 93A, § 11 (Count III). (Am.Compl.¶¶ 91–100). In April 2002, defendant moved to dismiss all counts. As to both false advertising claims, defendant argued that plaintiffs had failed to state a claim and that the false advertising claims essentially duplicated plaintiffs' copyright claim. As to Count III, specifically, defendant argued in addition that the claim was preempted by the federal Copyright Act. By order entered July 9, 2002, I granted the motion to dismiss as to Count III, but denied it as to Counts I and II. Following this ruling, the parties proceeded with discovery, litigated plaintiffs' motions for preliminary injunction and for class certification (both of which were denied), and proceeded to file cross motions for summary judgment.

On September 23, 2005, defendant brought to the court's attention the First Circuit's decision in *Venegas–Hernandez v. Asociacion De Compositores v Editores De Musica Latinoamericana,* 424 F.3d 50 (1st Cir.2005), suggesting that it was relevant to the outstanding copyright claim. (Docket # 37). One month later, plaintiffs filed a motion for leave to amend the amended complaint. The motion is silent with respect to *Venegas–Hernandez'*s impact on their copyright claims; instead, plaintiffs argue that the case "authorize[s] pursuit of state law claims" in cases of copyright infringement, thus entitling

them to reinstate their state-law false advertising claim.

Plaintiffs' motion is somewhat disingenuous. The amended complaint alleged two kinds of unlawful conduct: unlawful authorization of copyright violations, and false advertising statements. Count I, which claimed contributory or vicarious copyright infringement, alleged that defendant had "knowingly and systematically induc[ed], caus[ed], and materially contribut[ed] to the unauthorized reproductions and/or distributions of copyright Images." (Am.Compl.¶ 84). Counts II and III, however, were false advertising claims, focusing on specific statements made in CCC publications. These counts were, therefore, unrelated to the allegation that defendant had unlawfully facilitated copyright infringement, but instead concerned only alleged false representations. Count III thus never claimed injury based on contributory or vicarious infringement, but rather claimed injury based on defendant's false statements. Indeed, plaintiffs themselves repeatedly emphasized that their false advertising claims were not the same as their copyright infringement claim. (Pls.' Opp. to Mot. to Dismiss 15–20).

Plaintiffs now contend that "their state law claim for violation of M.G.L. c. 93A should not have been dismissed by this Court" based on *Venegas–Hernandez.* (Pls.' Mot. to Amend 3). Plaintiffs claim that they seek only "to assert a claim already articulated and now deemed viable by the recent decision of the First Circuit." (*Id.* at 4). The problem with this line of argument, however, is that what plaintiffs seek to assert is *not* the claim that they "already articulated," but rather something different. Plaintiffs are not attempting to reinstate their false advertising claim, but are rather seeking to assert an infringement claim under state law. Thus, their proposed second amended complaint

alleges a violation of chapter 93A based on *both* the alleged contributory infringement and the alleged false advertising. (Proposed Second Am. Compl. ¶ 83). For example, the proposed Count III asserts that defendant violated chapter 93A not only by making certain misrepresentations, but also by "authorizing its customers to make photocopies," "unjustly enriching itself by licensing Plaintiffs' copyrighted materials," and "undercutting and interfering with the Plaintiffs' efforts and ability to license their respective copyrights." (*Id.* ¶ 84). In other words, plaintiffs seek to recast their 93A claim as alleging copyright infringement, in addition to false advertising.

Plaintiffs' reasons for doing so are clear. In *Venegas–Hernandez,* the First Circuit addressed the question of whether a publisher's unauthorized grant of a license to a third party to copy a copyrighted work is itself an act of infringement, without further proof that the third party ever undertook an infringing act. 424 F.3d at 57. The First Circuit, after analyzing the statutory language and legislative history, ruled that authorization alone could not constitute infringement. *Id.* at 58. In doing so, the court noted, however, that, even if wrongful authorization of infringement could not be punished under federal law, "state law provides ample remedies." *Id.* The court specified that:

> if the authorizing entity collected a flat payment regardless of copying or performance, a state claim for unjust enrichment might lie; and if the authorization undercut efforts of the true owner to license the copyright, the true owner might sue for interference with contractual or advantageous economic relationships.

*Id.* (internal citations omitted). In other words, the First Circuit held that where a plaintiff can show that a defendant has wrongfully authorized infringement of

plaintiff's copyrights by a third party, that plaintiff may have remedies under state law, though none are available under federal law without further proof of actual infringement by the third party. But whatever *Venegas–Hernandez* may say about the availability of state-law remedies for claims of unlawful authorization of infringement, the case says nothing about false advertising claims. Thus, to the extent that plaintiffs claim that *Venegas–Hernandez* allows them to reinstate their state-law false advertising claim, they are incorrect.

■ With this procedural and legal background in mind, I now turn to plaintiffs' motion. Fed.R.Civ.P. 15(a) provides that "a party may amend the party's pleading only by leave of court ... and leave shall be freely given when justice so requires." Rule 15(a) amendments are typically allowed "in the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, [or] futility of the amendment." *Vargas v. McNamara,* 608 F.2d 15, 18 (1st Cir.1979).

■ To the extent that plaintiffs seek to revive the false-advertising portion of their 93A claim, I deny the motion based on undue delay. Over three years passed between the date on which Count III was dismissed and the date that plaintiffs' filed their motion to amend. In the interim, discovery proceeded and the parties litigated two substantive motions, without any attempt by plaintiffs to renew their false advertising claim under 93A. "When considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some valid reason for his neglect and delay." *Acosta–Mestre v. Hilton Int'l*

*of P.R.,* 156 F.3d 49, 52 (1st Cir.1998) (internal quotation marks omitted). Here, no such reason has been given. Plaintiffs argue that "there has been no undue delay" because their motion was filed soon after the First Circuit issued its decision in *Venegas–Hernandez* (Pls.' Mot. for Leave to Amend 4), but, as explained above, *Venegas–Hernandez* is irrelevant to the false advertising claims. Plaintiffs have offered no other "valid reason" for delay, and have therefore failed to sustain their burden. *Acosta–Mestre,* 156 F.3d at 52 (plaintiff filed motion to amend fifteen months after initial complaint filed, when discovery almost closed, and "nearly all the case's pre-trial work was complete," court found it would cause undue delay to allow plaintiff to amend complaint).

■ To the extent that plaintiffs seek to amend the complaint by filing an essentially new state-law claim, the motion is denied based on futility. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). A "proposed amendment is futile if it serves no legitimate purpose or is without legal merit." *Savoy v. White,* 139 F.R.D. 265, 267 (D.Mass. 1991). Where leave to amend is sought only after discovery has closed and summary judgment motions have been filed, "the proposed amendment must be not only theoretically viable but also solidly grounded in the record," and "substantial evidence" must support the allegations of the proposed amended complaint. *Hatch v. Dep't for Children, Youth and Their Families,* 274 F.3d 12, 19 (1st Cir.2001).

■ In this case, amendment would be futile because the record does not support the level of "rascality" required to sustain a 93A claim. *See, e.g., Henry v. Nat'l Geographic Soc'y,* 147 F.Supp.2d 16 (D.Mass.2001) ("[S]uch unfair practices must reach a level of rascality that would raise an eyebrow of someone inured to the

rough and tumble of the world of commerce, and be unscrupulous, intolerable, and unethical." (internal quotation marks and footnotes omitted)); *PMP Assocs. v. Globe Newspaper Co.*, 366 Mass. 593, 596, 321 N.E.2d 915 (1975) (conduct must be "immoral, unethical, oppressive [ ]or unscrupulous"). None of the allegations in the proposed amended complaint, and none of the evidence in the record suggests that CCC's conduct has been "unscrupulous" or "oppressive." Instead, the record indicates (1) that CCC is aware that a copyright problem exists when a photographer holds a copyright to a photograph that appears in a printed work to which CCC holds copying rights, (2) that CCC is interested in creating a licensing system for such photographs and has asked various photographer associations to participate, and (3) that, based on the information that CCC receives from the publishers who assign it copyrights, CCC is unable to determine whether those publishers or the original photographers hold the copyrights to any photographs that appear in the published works. That CCC is aware of a potential problem but feels unable to resolve the problem does not rise to the level of unscrupulous or unethical conduct requisite in a 93A case. CCC has averred that it authorized reproductions only where a rightsholder, usually the publisher, authorized CCC to do so, that CCC relies on the assurances of those rightsholders regarding their ability to authorize CCC to license, and that those rightsholders are generally sophisticated businesses. (Reynolds Decl. ¶¶ 6–8). That position is reasonable, *cf. Faulkner v. National Geographic Society*, 211 F.Supp.2d 450, 475 (S.D.N.Y.2002) (finding that co-sponsor was entitled to rely on publication's representation that it had dealt with rights issues where it made reasonable inquiry and received satisfactory assurances from pub-

lisher), and is surely not unscrupulous or oppressive.

Though they try, plaintiffs are unable to create a factual dispute on the rascality element. For example, plaintiffs argue that CCC knew which pages some of its customers copied, but—assuming that is true—plaintiffs have not explained how that knowledge would have told CCC that its customers were infringing plaintiffs' rights. Plaintiffs also point out that they told CCC representatives to stop infringing their rights, but just because plaintiffs told CCC that their rights were being violated does not necessarily mean that CCC was required to believe them. *See Faulkner*, 211 F.Supp.2d at 474 (while co-sponsor may have had knowledge of adverse claims several years earlier, "it is not apparent that [the co-sponsor] should have known from the existence of these claims that [plaintiffs' copyrights were being infringed"). Because no factual dispute exists as to whether CCC's conduct reached the level of rascality required under 93A, amendment would be futile and is denied.

## II. *Defendant's Motion for Summary Judgment*

Defendant moves for summary judgment on both remaining counts. Summary judgment may be granted when "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56©. I view the evidence in the light most favorable to plaintiffs and draw all reasonable inferences in their favor. *See Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir.2000).

### A. *Contributory or Vicarious Infringement*

██ Count I of the amended complaint alleges contributory and vicarious infringement by CCC. Defendant raises several arguments as to why plaintiffs cannot, as a

matter of law, show contributory or vicarious infringement. Because I agree with defendant that plaintiffs have proffered no evidence of direct infringement by a third party, I do not consider defendant's other grounds.

■ A defendant is not liable under a contributory or vicarious theory of liability unless plaintiffs show direct infringement by a third party. *See, e.g., Polygram Int'l Publ'g, Inc. v. Nevada/Tig, Inc.,* 855 F.Supp. 1314, 1320–21 (D.Mass.1994) (citing *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 434, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984)). Plaintiffs fail adequately to address this principle. Their opposition to defendant's motion fails to offer or even refer to any direct infringement by a third party. Plaintiffs' motion for partial summary judgment and reply memorandum offer three arguments, but none is satisfactory. First, they claim that they have shown direct infringement through the investigative work of Richard Hamilton, who obtained copies of plaintiffs' copyrighted work from CCC at their direction. (Pls.' Mem. in Supp. of Mot. for Partial Summ. J. 11; Pls.' Reply Mem. 3). But Hamilton's activities were authorized by plaintiffs themselves. Where the person making the copies has been "authorized by the copyright owner to use the copyrighted work," he has not infringed. *Sony Corp.,* 464 U.S. at 433, 104 S.Ct. 774. Thus, Hamilton's work does not constitute direct infringement by a third party.

Second, plaintiffs argue that they need not show direct infringement. Specifically, they say that an "evidentiary exception" excuses them from having to plead or demonstrate direct infringement by third parties. (Pls.' Mem. in Supp. of Mot. for Partial Summ. J. 11). The cases cited by plaintiffs in support of this proposition provide little help. In all of the cases, the defendants were alleged to have directly infringed the plaintiffs' copyrights by unlawfully distributing copies of the plaintiffs' works. The issue addressed in the cases was therefore whether plaintiffs could show "distribution," within the meaning of the Copyright Act, by showing that defendants had made the copyrighted works available, or whether they needed to provide evidence that third parties had actually obtained the copyrighted works from defendants. In *Hotaling v. Church of Jesus Christ of Latter–Day Saints,* 118 F.3d 199 (4th Cir.1997), for example, there was no dispute that the defendant had made unauthorized copies and had made the copies available to the public at its library branches. The question was whether this latter act could constitute unlawful distribution within the meaning of the Copyright Act. The court found that it could.

In this case, however, there is no allegation that defendant directly infringed plaintiffs' rights by unlawfully distributing copies of their works. Instead, the allegation is that defendant unlawfully facilitated and encouraged third parties to making unauthorized copies. What a plaintiff must show to make out a claim of direct infringement by distribution does not speak to what a plaintiff must show to make out a claim of contributory or vicarious infringement.[1] Such a claim is, at

---

1. Nor are the other cases cited by plaintiffs helpful. Indeed, one cited case makes exactly the opposite point. *See Arista Records, Inc. v. MP3Board, Inc.,* No. 00 Civ. 4460, 2002 WL 1997918, at *3 (S.D.N.Y.2002) ("In order to establish liability for contributory or vicarious copyright infringement, a plaintiff must first prove that direct infringement of its works occurred by showing that it owned a valid copyright and unauthorized infringement of its protected material occurred."). Both *Arista* and *Peer Int'l Corp. v. Latin American Music Corp.,* 161 F.Supp.2d 38, 55 (D.P.R.2001), concern direct infringement via distribution.

bottom, a claim that the defendant encouraged, facilitated, or assisted a third party in copyright infringement; in the absence of any proof that a third party engaged in such infringement, it is hard to imagine how the defendant could be held liable.

■ Plaintiffs' third argument is that they need not show direct infringement by a third party because they are claiming direct infringement by defendant. This strategy is apparent in plaintiffs' reply memorandum, in which they argue that "a direct cause of action lies against one who *authorizes* acts that violate [statutory] rights." (Pls.' Reply Mem. 4). They further claim that "[a]uthorizing customers to copy from the CCC's index ... is a violation of Plaintiffs' rights of distribution and reproduction." (*Id.*). The argument presents two difficulties. First, the amended complaint does not allege direct infringement by defendant. The original complaint did include a claim of direct infringement (Original Compl. ¶¶ 61–72), but plaintiffs voluntarily and expressly withdrew that claim when they filed their first amended complaint (Pls.' Opp. to Mot. to Dismiss 1–2 ("The First Amended Complaint does not maintain an action for direct copyright infringement.")). They expressly abandoned the direct infringement claim by filing an amended complaint. *See Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 16 (1st Cir.2003). Thus, despite the representations of plaintiffs' counsel at the summary judgment hearing, they are not entitled to pursue such a claim. Plaintiffs' summary judgment papers indicate that they "intend to file a motion to revive their claim for direct infringement" (Pls.' Reply Mem. 6 n. 7), but no such motion has been filed. Indeed, although plaintiffs have since moved to amend the complaint to revive their state law claim (*see supra*), they have never sought to revive their direct infringement claim.

■ The other problem with plaintiffs' argument is that it contradicts prevailing First Circuit law. Plaintiffs claim that someone who *"authorizes* the use of a copyrighted work without actual authority from the copyright owner" has directly infringed the owner's rights. (Pls.' Reply Mem. 4). They argue that defendant, by authorizing third parties to make copies of plaintiffs' work, has infringed plaintiffs' rights. But in a recently issued decision, the First Circuit expressly rejected this argument. The court found that "a music publisher's unauthorized grant of a license to a third party to perform or copy a copyrighted work" is not itself an act of infringement, "where there is no adequate proof that the third party ever undertook an infringing act." *Venegas–Hernandez*, 424 F.3d at 57. In other words "wrongful authorization alone" cannot constitute infringement under the statute. *Id.* Where there is "no direct proof of an infringing act after the authorization," no infringement has occurred. *Id.* at 59. Thus, to the extent that plaintiffs advance a claim of direct infringement, that claim has been expressly abandoned and is, moreover, without merit.

In sum, plaintiffs have failed to present any evidence of direct infringement by a third party, which is a necessary element of any claim for contributory or vicarious infringement. Because no factual dispute exists on this issue, defendant is entitled to summary judgment on Count I.

### B. *False Advertising*

Defendant also moves for summary judgment on Count II, which alleges false

---

Thus, while *Arista, Peer,* and *Hotaling* may be relevant in cases of infringement by distribution, they are irrelevant in a case involving contributory or vicarious infringement.

advertising under § 43(a) of the Lanham Act, 17 U.S.C. § 1125(a). Specifically, plaintiffs allege that defendant violated the Lanham Act when it represented to customers (1) that CCC licenses "allow[ ] all your U.S. employees to legally make unlimited copies ... from nearly two million registered titles without the administrative hassle and expense of individual permissions," and (2) that once a CCC license is obtained, licensees "have a green light to duplicate from CCC's repertory of copyrighted works as often as needed." (Am. Compl. ¶ 92 (citing CCC publication)). Plaintiffs contend that these statements gave "false reassurance to the public that plaintiffs' ... copyrights would be respected." (*Id.* ¶ 94).

To make out a claim of false advertising, plaintiffs must prove that defendant made a false statement of fact in a commercial advertisement. *See Clorox Co. P.R. v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 33 n. 6 (1st Cir.2000). "A plaintiff can succeed on a false advertising claim by proving either that an advertisement is false on its face or that the advertisement is literally true or ambiguous but likely to mislead or confuse customers." *Id.* at 33. Defendant argues that because plaintiffs have failed to present a material factual issue as to the falsity of the statements at issue, the claim must be dismissed as a matter of law. I agree.

Plaintiffs' theory is that defendant's statement falsely reassured its customers that obtaining a CCC license would allow customers to engage in copying without infringing copyrights. But this statement is only false if, in fact, customers who obtained CCC licenses were *not* able to engage in copying without infringing copyrights. In other words, in order for the disputed statements to be false or misleading, one must assume that CCC's licensees actually infringed copyrights when they engaged in copying under CCC licenses. As discussed above, plaintiffs have presented no evidence of actual infringement by third parties. If no infringement occurred, then the statements were not false or misleading, and the false advertising claim must be dismissed.

### III. *Conclusion*

Plaintiffs' motion to amend ·the complaint (# 98) is denied. Defendant's motion for summary judgment (# 73) is granted. Plaintiffs' motion for partial summary judgment (# 62) is denied as moot.