FILED
United States Court of Appeals
Tenth Circuit

December 23, 2013

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ANDREW DIVERSEY,

      Plaintiff – Appellant,

v.

DAVID SCHMIDLY; RICHARD
HOLDER; CHARLES FLEDDERMANN;
JAMES KOCH; RAYMOND SANCHEZ;
MARTHA BEDARD; JACK FORTNER,
all individually and in their official
capacities,

      Defendants – Appellees.

No. 13-2058

---

**Appeal from the United States District Court
for the District of New Mexico**[*]
**(D.C. No. 1:12-CV-00651-SMV-WDS)**

---

Submitted on the briefs:

Andrew Diversey, Plaintiff-Appellant, Pro Se.

Kimberly N. Bell, Associate University Counsel, The University of New Mexico,

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

Albuquerque, New Mexico, for Defendants – Appellees.

Before **MATHESON**, Circuit Judge, **PORFILIO**, and **O'BRIEN**, Senior Circuit Judges.

**O'BRIEN**, Senior Circuit Judge.

Andrew Diversey sued several administrators and members of the Board of Regents of the University of New Mexico (UNM) for infringing his copyright to an unpublished dissertation. The district court dismissed Diversey's complaint as untimely under Fed. R. Civ. P. 12(b)(6). Our review requires us to determine when claims of copyright infringement accrue, and, in particular, whether accrual is delayed until a continuing course of infringement ceases. Barring the application of an appropriate tolling principle, a copyright infringement claim must be brought within three years of the date on which the plaintiff becomes aware of an act of infringement or becomes chargeable with knowledge of it. Applying this rule, we affirm in part and reverse in part.

## BACKGROUND AND PROCEDURAL HISTORY

Since we accept all well pleaded facts as true, our factual recitation comes primarily from Diversey's amended complaint. He was a doctor-of-philosophy (Ph.D.) student studying linguistics at the University of New Mexico. His complaint paints a picture of intractable difficulties with the members of his dissertation committee. The members did not provide him with mentorship or feedback on his dissertation drafts, even

after he complained to departmental and university administrators, including Charles Fleddermann, UNM's Dean of Graduate Studies. Diversey claims the dissertation committee failed to review the final draft of the dissertation, and says, "[t]he dissertation must . . . be fully reviewed and evaluated in its final form by the committee members and director before being officially approved and submitted; otherwise it is illegitimate and thus of no academic value. " (R. Vol. I at 68.)

As Diversey continued to attempt to convince UNM officials to correct the deficiencies in the dissertation process, he provided a copy of the draft dissertation to UNM Dissertation Coordinator Doug Weintraub, who volunteered to proofread it. Before Weintraub could do so, Fleddermann allegedly confiscated the draft. On February 7, 2008, UNM Deputy Provost Richard Holder wrote Diversey to advise him the dissertation had been deposited in the Zimmerman Library at UNM. The draft dissertation was also sent to ProQuest, UNM's dissertation publisher. On February 20, 2008, a ProQuest representative confirmed receipt of the draft dissertation. On Diversey's protest, ProQuest returned the manuscript to UNM.

Diversey escalated his complaints: he contacted UNM's President, its Dean of Student Affairs, and several members and officers of UNM's Board of Regents to no avail. Then, on June 16, 2009, Diversey discovered two copies of his dissertation: one in UNM's Zimmerman Library and another in the collection of the Zimmerman Library's Center for Southwest Research. These copies were available to the general public. Diversey wrote each of the appellees, including the Dean of University Libraries, citing

his copyright and requesting the return of all copies of his dissertation. On October 5, 2009, UNM's counsel sent Diversey a letter refusing Diversey's request.[1]

On June 15, 2012, Diversey filed a complaint for copyright infringement. In dismissing the case, the magistrate judge[2] concluded the copyright infringement claims accrued in February 2008 when Diversey was notified of the dissertation's deposit in the Zimmerman Library and became aware it had been sent to ProQuest. Thus, he concluded, the three-year limitation period elapsed by February 2011, and Diversey's June 2012 complaint was not timely. He also rejected Diversey's argument that UNM's ongoing distribution of his work in its libraries was a continuing infringement for which the cause of action did not accrue until the infringement ceased.

## DISCUSSION

Our review of a Fed. R. Civ. P. 12(b)(6) dismissal is de novo. *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011). We accept the well-pled factual allegations in the complaint as true, "resolve all reasonable inferences in the plaintiff's favor," *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126-27 (10th Cir. 1998), and "ask whether it is plausible that the plaintiff is entitled to relief." *Bixler v. Foster*,

---

[1] According to the letter, UNM officials believed they had "certain non-exclusive rights in the dissertation, e.g., an implied license to keep copies of the dissertation at the University Libraries and to catalog the work." (R. Vol. I at 85.)

[2] The parties consented to have their case heard and decided by a magistrate judge. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(a). Under this procedure, Diversey properly appealed directly to this court. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

- 4 -

596 F.3d 751, 756 (10th Cir. 2010) (quotations omitted) (applying the "plausibility"

pleading standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544 (2007)).  We also liberally construe Diversey's pro se

pleadings.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Thus, if we "can

reasonably read the pleadings to state a valid claim on which the plaintiff could prevail,

[we] should do so despite the plaintiff's failure to cite proper legal authority, his

confusion of various legal theories, his poor syntax and sentence construction, or his

unfamiliarity with pleading requirements."  *Id.*

We first examine and apply the law relating to the limitation period applicable to

Diversey's claims.  Then, we examine the two alternative rationales the appellees assert

in defense of the dismissal.[3]

A.  Limitation Period for Copyright Infringement Claims

A claim for copyright infringement must be brought "within three years after the

claim accrued."  17 U.S.C. § 507(b).  Under the majority view, a claim "for copyright

infringement accrues when one has knowledge of a violation or is chargeable with such

---

[3] The transcript of the district court's motion on the appellee's motion to dismiss reflects some discussion as to whether the doctrine of qualified immunity protects the appellees from liability for their actions.  During this discussion, neither party discussed the explicit immunity-stripping provisions of 17 U.S.C. §§ 501(a) and 511(a).  *See also Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.,* 633 F.3d 1297, 1313-15 (11th Cir. 2011) (discussing immunity issues in copyright infringement cases).  Because the appellees have not urged affirmance on this alternative ground and because the issue presents possibly thorny questions, we do not address it.  The initial furrow in the plowing of such rocky ground is best turned by the district court.

knowledge." *Roley v. New World Pictures, Ltd*., 19 F.3d 479, 481 (9th Cir. 1994); *see Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 202 (4th Cir. 1997). The statute is evenhanded; "'[i]t does not provide for a waiver of infringing acts within the limitation period if earlier infringements were discovered and not sued upon, nor does it provide for any reach back if an act of infringement occurs within the statutory period.'" *Roley*, 19 F.3d at 481 (quoting *Hoey v. Dexel Sys. Corp*., 716 F. Supp. 222, 223 (E.D. Va. 1989)); *accord Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004); *Hotaling,* 118 F.3d at 202; *Makedwde Pub. Co. v. Johnson,* 37 F.3d 180, 182 (5th Cir. 1994); *Stone v. Williams*, 970 F.2d 1043, 1049-50 (2d Cir. 1992).[4] In other words, the majority view rejects the notion that a plaintiff can recover for acts of infringement occurring more than three years before the filing of a complaint merely because some related act of infringement occurs within the limitation period.

Diversey relies in part on the minority interpretation of § 507(b)'s limitation period, which applies a "continuing wrong" exception. The most prominent of the cases advancing this minority interpretation is the Seventh Circuit's decision in *Taylor v. Meirick*,712 F.2d 1112 (7th Cir. 1983). There, the court rescued a plaintiff's contributory

---

[4] The district courts within this circuit have generally taken this view. *See Rocking Chair Enters. v. Macerich SCG Ltd.*, 407 F. Supp. 2d 1263, 1266-67 (W.D. Okla. 2005); *Fisher v. United Feature Syndicate, Inc*., 37 F. Supp. 2d 1213, 1217 (D. Colo. 1999); *In re Indep. Servs. Orgs. Antitrust Litig.*, 964 F. Supp. 1469, 1478 (D. Kan. 1997).

infringement claims from the statute of limitations; under ordinary tort principles, it reasoned, the limitation period "does not begin to run on a continuing wrong till the wrong is over and done with." *Id.* at 1118; *see also United States v. Shabazz*, 724 F.2d 1536, 1540 (11th Cir. 1984) (applying the then-three-year limitation period for criminal prosecutions of copyright infringements in a comparable fashion);[5] *Baxter v. Curtis Indus.,* 201 F. Supp. 100, 101 (N.D. Ohio 1962).  Even though some of the plaintiff's claims against the defendant's own copyright infringements may have been barred under § 507(b), the *Taylor* court concluded the defendant was still contributorily liable for the infringing sales of retailers to whom the defendant wholesaled his infringing copies, as long as those sales occurred before the limitation period elapsed.  *See Taylor,* 712 F.2d at 1118-19.

The minority view is not compelling.  First, the statute itself says nothing to support a special limitation rule for "continuing wrongs."  *See* 17 U.S.C. § 507(b); *Roley*, 19 F.3d at 481 ("Section 507(b) is clear on its face.").  Second, although the minority view seems intended to ensure copyright infringers do not escape liability when their infringing acts are obfuscated by the stream of commerce, the majority accrual rule and tolling principles adequately protect copyright owners' rights in such situations.  The limitation period never begins to run until the plaintiff knows or has reason to know of

---

[5] *But see Makedwde*, 37 F.3d at 181 n.2 ("We do not understand the *Shabazz* opinion to rely on a continuing tort type theory.").

the infringement. *Roley*, 19 F.3d at 481. Moreover, when an infringer's actions are calculated to deceive the plaintiff, the accrual may be tolled even further. *See Taylor*, 712 F.2d at 1118 (observing a copyright infringement plaintiff is entitled to tolling when the defendant's actions are "calculated to obstruct any inquiry [plaintiff] might have made"). Indeed, this tolling principle alone would have been sufficient to allow the *Taylor* plaintiff relief from the statute of limitations. *Id.* at 1119 ("[E]ither of the tolling principles discussed earlier would allow [plaintiff] to collect damages for acts of infringement more than three years in the past, at least if he acted promptly once he discovered them . . . ."). Accordingly, we reject as unnecessary the "continuing wrong" doctrine in the copyright infringement context and adopt the majority view.

B. Copying and Distribution Claims

Diversey contends the district court erred in concluding his claims were barred under the three-year limitation period. In particular, he argues the judge erred by "failing to recognize separate . . . accrual dates for each distinct infringement." (Appellant Br. at 16.) We agree and conclude Diversey's claim for infringement of his *distribution* right is not time-barred.

Diversey argues "there are actually several distinct copyright infringements giving rise to several independent claims for relief, each of which has its own corresponding . . . accrual date." (Appellant Br. at 17.) According to his amended complaint, there were two alleged infringements. First, his exclusive right to make copies was infringed when the draft dissertation was reproduced for deposit in UNM's Zimmerman Library and its

Center for Southwest Research.  *See* 17 U.S.C. § 106(1) (giving the copyright owner the exclusive right "to reproduce the copyrighted work in copies").  Second, his exclusive right to distribute his work was allegedly infringed when the University listed his work in its library catalog for public lending.  *See* 17 U.S.C. § 106(3) (giving the copyright owner the exclusive right "to distribute copies . . . of the copyrighted work to the public by sale . . . or by rental, lease, or lending").

As to the copies made for deposit in the libraries, the judge's analysis was correct.  Holder's February 7, 2008, letter apprised Diversey of the deposit of his dissertation in Zimmerman Library, which also houses the collection of the Center for Southwest Research.  This notice appears to have been effective, as it prompted Diversey to contact ProQuest, UNM's dissertation publisher, to inquire as to whether it, too, had received a copy of the draft dissertation.[6]  When ProQuest confirmed it had received a copy on February 20, 2008, Diversey knew at least one unauthorized copy had been made.  Thus, his claim for unauthorized copying under § 106(1) accrued no later than February 20, 2008.  His June 15, 2012, complaint was not timely.

However, Diversey's claim of unauthorized distribution under § 106(3) must be separately considered.  *See Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004) ("[E]ach act of infringement is a distinct harm."); *see also Roley*,

---

[6] According to the amended complaint, the copy sent to ProQuest was the authorized copy Diversey handed over to Weintraub.  Thus, it appears only the copies placed in Zimmerman Library were unauthorized.

19 F.3d at 481 (observing that a copyright infringement claim "may be brought for all acts that accrued within the three years preceding the filing of the suit."). As Diversey points out, § 106(3) explicitly protects the copyright owner's exclusive right to distribute copies by lending. *See Hotaling,* 118 F.3d at 203 ("When a public library adds a work to its collection, lists the work in its index or catalog system, and makes the work available to the borrowing or browsing public, it has completed all the steps necessary for distribution to the public."); 2 Melville Nimmer & David Nimmer, Nimmer on Copyright § 8.11[B][4][d] at 8-154.10 (2013) ("No consummated act of actual distribution need be demonstrated . . . to implicate the copyright owner's distribution right.").[7] We see no

---

[7] The appellees argue merely listing the work in the libraries' catalog information system does not violate Diversey's distribution right. They say Diversey must (but has failed to) allege the libraries actually distributed an unauthorized copy to a member of the public. They cite *Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976 (D. Ariz. 2008) to suggest "'§ 106(3) is not violated unless the defendant has actually distributed an unauthorized copy of the work to a member of the public.'" (Appellee's Br. 14 (quoting *Howell*, 554 F. Supp. 2d at 883).)

*Howell* does reflect some dissensus, particularly among district courts, about the applicability of *Hotaling*'s holding to cases of Internet file-sharing. We need not delve into the file-sharing issue today. *Hotaling*, like this case, involves a public library making "the work available to the borrowing or browsing public." *Hotaling*, 118 F.3d at 203. A patron could "visit the library and use the work." *See id*. This is the essence of a violation of the copyright owner's exclusive right to distribute his work via lending. *See* 17 U.S.C. § 106(3); *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 552 (1985) (noting § 106(3) gives the copyright owner "the right to control the first public distribution . . . of his work" (quotation omitted)); Peter S. Menell, In Search of Copyright's Lost Ark: Interpreting the Right to Distribute in the Internet Age, 59 J. Copyright Soc'y U.S.A. 1, 52-66 (2011) (analyzing the legislative history regarding the distribution right and concluding the requirement of actual distribution of an unauthorized copy is unwarranted).

reason Diversey should have known about the UNM libraries' distribution of his work before June 16, 2009, when he discovered his draft dissertation's entry in the UNM libraries' catalog information system. According to the amended complaint, he diligently checked this information system "[a]t regular weekly (and often even daily) intervals." (R. Vol. I at 84.) As his prior searches failed to discover any reference to his dissertation, they confirmed the work was not "distributed," in the parlance of § 106(3), until June 16, 2009. Further, given Diversey's continued efforts to work with UNM officials to both prevent his dissertation from being distributed and to rectify the lack of attention given to it by the faculty, he had a legitimate reason to believe UNM might indeed change course and elect not to distribute the dissertation in its libraries.

In the appellees' view, Diversey had actual notice of the alleged infringement of his distribution right when he was informed his dissertation "'had been deposited in Zimmerman Library' on February 7, 2008." (Appellee Br. 8.) This assertion elides the distinction between the deposit in the library and the library's subsequent distribution of the work. Given Diversey's objections and the routine processing time necessary for the libraries to add the dissertation to their collections, the deposit of the dissertation in the library was not tantamount to the distribution of the work. The essence of distribution in the library lending context is the work's availability "to the borrowing or browsing public." *See Hotaling*, 118 F.3d at 203. Until the work was available in the catalog system, Diversey had no reason to believe it was available to the borrowing or browsing public.

- 11 -

Diversey's claim of infringement of his right to distribution accrued on June 16, 2009, and his June 15, 2012, complaint was timely as to this claim. The judge's contrary conclusion was an error.[8]

C. Fair Use

As an alternative basis for affirmance, the appellees contend their use was permissible under the statutory provisions for fair use. *See* 17 U.S.C. § 107. Under the facts as alleged in the amended complaint, the fair-use analysis favors Diversey.

The Copyright Act of 1976 recognizes the common-law defense of fair use. 17 U.S.C. § 107; *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 549 (1985). The fair-use defense insulates from liability certain violations of a copyright owner's exclusive rights "for purposes such as criticism, comment, news reporting, teaching . . ., scholarship, or research." 17 U.S.C. § 107. It establishes the four primary (but non-exclusive) factors to determine whether a particular use is fair:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

---

[8] Our resolution of this issue in Diversey's favor makes the resolution of his arguments about the judge having made "false inferences and factual misrepresentations" unnecessary. (Appellant Br. at 34.)

*Id.* As amended, § 107 tells us the unpublished nature of a work does "not itself bar a finding of fair use if such finding is made upon consideration of all the above factors." *Id.*

Here, only the first factor—purpose and character of use—weighs strongly in the appellees' favor. The use at issue is the distribution of the dissertation via the UNM libraries. This is a non-commercial, educational purpose at the heart of the protection for fair use. The libraries themselves, while they apparently serve the public, are academic libraries existing primarily for scholarly and research purposes.

The second factor—the nature of the copyrighted work—weighs strongly in Diversey's favor. As he notes, "[u]nder ordinary circumstances, the author's right to control the first public appearance of his undisseminated expression will outweigh a claim of fair use." (Appellant Br. at 28 (quoting *Harper & Row*, 471 U.S. at 555).); *see Harper & Row,* 471 U.S. at 553 (noting the copyright owner's heightened interest in the right of first publication relative to the other exclusive rights provided under 17 U.S.C. § 106).) Indeed, at common law, the defense of fair use could *never* be applied to alleged infringements of unpublished works. *Harper & Row*, 471 U.S. at 550-51; *Salinger v. Random House, Inc.*, 811 F.2d 90, 95 (2d Cir. 1987). Although this restriction has subsequently softened, *see Salinger*, 811 F.2d at 95, the unpublished nature of Diversey's dissertation weighs heavily against the appellees under the second fair-use factor. *See* 17 U.S.C. § 107(2); *Salinger*, 811 F.2d at 96-97.

The third factor—the amount and substantiality of the portion used in relation to the whole—also weighs strongly in Diversey's favor because the UNM libraries are distributing the *entire* dissertation.

The fourth factor—the effect of the use on the potential market for or value of the copyrighted work—is somewhat harder to assess. Diversey does not allege his work was intended for the commercial market. Rather, the value of the work is in the opportunities it affords him to properly complete his doctoral program, compete for academic jobs, and advance the scholarship in his discipline. At this stage, we accept as true his assertion that he cannot effectively complete the dissertation review and defense process at another institution while UNM still lists his work in its libraries' catalogs. This has completely deprived him of the value of the dissertation. This factor weighs in his favor.

Because, at this stage, the fair-use factors tilt heavily against the appellees, their use cannot be considered fair under 17 U.S.C. § 107.

D. Involvement of Each of the Appellees

As another alternative basis for affirmance, the appellees contend Diversey's amended complaint fails to allege any of them personally "undertook any act to cause the dissertation to be cataloged." (Appellee Br. 13.) We leave this issue for the district court to resolve on remand.

Ordinarily, there are two elements to a claim for liability for copyright infringement. A plaintiff must show (1) he owns a valid copyright to the allegedly infringed work, and (2) the defendant violated one of his exclusive rights as copyright

- 14 -

owner.  *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 & n.2 (10th Cir. 1996); *see* 17 U.S.C. §§ 106, 501(a).  However, a defendant can also be secondarily liable for another's copyright infringement under principles of vicarious and contributory liability.  *See Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 261-65 (9th Cir. 1996).  Vicarious liability attaches when the defendant "has the right and ability to supervise the infringing activity" and "has a direct financial interest in such activities."  *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).  A defendant may be vicariously liable even when he or she is not aware of the infringing activity.  *Fonovisa*, 76 F.3d at 262.  By contrast, contributory liability attaches when the defendant causes or materially contributes to another's infringing activities and knows of the infringement.  *Id.* at 264.  One way of establishing contributory liability is by showing a defendant "authorized the infringing use."  *Softel, Inc. v. Dragon Med. & Scientific Comms., Inc.*, 118 F.3d 955, 971 (2d Cir. 1997) (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 437 (1984)).

Here, there appears to be no dispute as to the validity of Diversey's copyright. And, in light of the above discussion, Diversey's exclusive right to control the distribution of his dissertation was infringed.  The appellees ask us to determine whether the amended complaint adequately alleges sufficient involvement to expose each of them to liability.  In the appellees' view, the complaint fails to allege any of them personally listed the dissertation in the libraries' catalog system or asked anyone else to do so.

- 15 -

On the contrary, this is exactly what the complaint alleges with respect to Fleddermann. It alleges he confiscated the draft dissertation from Weintraub's office and provided it to the UNM libraries for inclusion in their collections. As this resulted in the libraries' distribution of the dissertation, Diversey has stated a plausible claim of contributory copyright infringement claim against Fleddermann.

We are, however, reluctant to extend our analysis beyond Fleddermann.[9] The judge did not address the arguments with respect to any of the other appellees in his memorandum opinion. Because Diversey's claims include allegations of secondary liability, a fact-intensive analysis will be necessary to determine whether he has stated a plausible claim against each appellee. We decline to decide this issue in the first instance. *See Lowe v. Town of Fairland, Okla*., 143 F.3d 1378, 1381 (10th Cir. 1998) ("As a general rule an appellate court does not consider an issue not passed upon below.").

**CONCLUSION**

With respect to Diversey's claims of infringement of his exclusive right to copy his dissertation, we AFFIRM the judgment of the district court. With respect to his claim

---

[9] Diversey named as defendants three members and officers of UNM's Board of Regents (James Koch, Raymond Sanchez, and Jack Fortner) with whom he communicated during his efforts to resolve his concerns. He also named three administrators he contacted: Martha Bedard, UNM's Dean of University Libraries, David Schmidly, UNM's former president, and former Deputy Provost Richard Holder. In addition to his other contacts with the appellees, Diversey sent each of the appellees a letter demanding they cease UNM's infringement of his copyright.

of infringement of his exclusive right of distribution, we REVERSE and REMAND for further proceedings consistent with this opinion.